JAMES MAROS et al., Plaintiffs-Appellants, *v.* JAY JONES et al., Defendants-Appellees.

(No. 56601;

First District—July 26, 1972.

Samuel Morgan, of Chicago, for appellants.

Maurice P. Raizes, of Cohon, Raizes & Regal, of Chicago, for appellees.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Cook County entered after a jury verdict for the defendants. The issues on appeal are whether the seller's inability or unwillingness to comply with certain subdivision statutes and ordinances constituted a breach of contract which entitled plaintiffs to a return of their earnest money without tendering the balance of the purchase price, and whether the court erred by refusing to admit evidence of the seller's noncompliance with those statutes and ordinances.

On February 20, 1969, the defendant, Drovers National Bank of Chicago, as trustee, held title to a tract of vacant land 662.2 feet long and 209.79 feet wide, located in the Village of Olympia Fields, Illinois. The beneficiary of the trust was the wife of the defendant, Jay Jones, a real estate broker. On that day the plaintiffs entered into a contract in writing with the defendant bank to buy the east 209 feet of the tract for the sum of $25,000. An earnest money deposit of $5,000 was paid by the plaintiffs to Jay Jones. The contract provided that the seller agreed to convey a "recordable" trustees deed to the buyer.

The parcel had never been subdivided and was described by metes and bounds. The plaintiffs proposed to build a single family residence on the land, and the defendant Jones proposed to build a single family residence on the remainder of the tract. The total tract bordered on Western Avenue, and access from the retained portion could be obtained only over the parcel to be sold to the plaintiffs. A rider attached to the contract provided that the buyers agreed to construct a roadway for ingress and egress for adjoining properties on the north 16 feet of the property set aside for a roadway.

The plaintiffs obtained financing from the Matteson-Richton Bank, which refused to provide the money unless a subdivision plat was filed. After the defendant was informed of this he made some attempts to process a subdivision, but did not complete it. Jay Jones testified as follows:

"Q. Did you ever have any discussion with Mr. Burke [President of the Village of Olympia Fields] with reference to your desire to avoid certain portions of the subdivision control ordinance?

A. Yes.

Q. Will you tell us what that conversation was?

A. There were two. One was a telephone conversation, and another was in the meeting at the Planning Commission. Everyone else on the Planning Commission agreed with the drawing that I had given, stating that I would not have to put in a road because the path of the road would have destroyed a number of large, old trees. He felt that a road should be put there.

Q. When you say he, you mean Mr. Burke?

A. Mr. Burke, yes.

Q. Go ahead.

A. I disagreed. The conclusion of the meeting was for me to come back with another drawing, and they would then make a final decision.

Q. Did you come back with such a drawing?

A. No."

Jones also testified the reason he did not complete the plans for the subdivision was that the Maroses informed him they were no longer interested in acquiring the property.

The closing date of March 31, 1969, passed without the sale being consummated. Mrs. Larsen, the real estate broker who had negotiated the sale, received a letter dated April 23, 1969, from the Village Clerk of Olympia Fields in response to her inquiry. The letter stated that the parcel to be sold was a "buildable lot for a single family residence" but that, "This letter applies only if a subdivision plat has been filed * * *." On May 8, 1969, plaintiffs wrote a letter to defendant Jones requesting return of the earnest money "By reason of the sellers' failure to perform."

On July 2, 1969, the attorney for defendants wrote a letter to the plaintiffs, in which he stated:

"Please be advised that the undersigned represents Jay Jones, Agent for Drovers National Bank, as Trustees under Trust # 68279. This letter is being written on behalf of our client to advise you that pursuant to your various conversations and conferences prior to and subsequent

to March 31, 1969, our client is ready, able and willing to deliver Trustee's Deed in accordance with said contract, and to convey good title to you in conformance with the same.

Please advise as to when you will be available to close this matter so that the same may be disposed of. Unless this matter is consummated within ten days from date of this letter, our client shall have no alternative but to determine that this contract has been terminated due to your fault, and consequently the earnest money shall be forfeited as provided under the terms of the contract."

The plaintiffs' attorney responded in a letter dated July 15, 1969, in which he pointed out that a demand for a return of the earnest money had been made as a result of the defendants' inability to deliver the property on March 31, 1969, "as provided in the contract with my clients, James and Bess Maros."

The plaintiffs' contention is that Illinois law requires the subject property to be subdivided before good title may be transferred, and that the trial judge ignored the law in ruling on the admission of evidence and in instructing the jury.

Section 1 of Chapter 109, Ill. Rev. Stat. 1969, provides:

"(a) Except as otherwise provided in subparagraph (b) of this Section, whenever the owner of land subdivides it into 2 or more parts, any of which is less than 5 acres, he must have it surveyed and a plat thereof made by a Registered Land Surveyor, which plat must particularly describe and set forth all public streets, alleys, ways for public service facilities, parks, playgrounds, school grounds or other public grounds, and all tracts, parcels, lots or blocks, and numbering all such lots, blocks or parcels by progressive numbers, giving their precise dimensions."

Section 5a of Chapter 109 provides:

"Recorder of Deeds or Registrar of Title of any County shall not record deeds or leases which attempt to convey property contrary to the provisions of this Act."

The Village of Olympia Fields also contemplated that a plat should be filed in the instant situation. Section I.A-1 of General Ordinance No. 18 defines a subdivision as follows:

"A. Subdivision and Resubdivision

1. The term 'Subdivision' means the division of a parcel of land not heretofore divided into lots or blocks on a recorded or registered plat into two (2) or more lots for the purpose of transfer of ownership or for building development, or if a new street is involved, any division of such parcel of land. The term, when appropriate to the context, shall relate to the process of subdividing or to the land subdivided."

The President of the Village of Olympia Fields testified this section required a plat to be filed in the instant case. Section 11—15—1 of the Illinois Revised Statutes, Chapter 24, 1969, provides:

"The corporate authorities may provide, by ordinance, that any map, plat, or subdivision of any block, lot, sub-lot, or part thereof, or of any piece or parcel of land, shall be submitted to the corporate authorities, or to some officer to be designated by them, for their or his approval. In that case no such map, plat, or subdivision shall be entitled to record in the proper county, or have any validity until it has been so approved * * *. Until approved by the corporate authorities, or such officer designated by them, no such map, plat or subdivision plat shall be entitled to record in the proper county, or have any validity whatever."

■■ It is clear from the record that the court misunderstood the use of the word "subdivision" under the statutes, as is illustrated by the following colloquy:

"THE COURT: Come, come, come. A deed represents a certain parcel of land. It is not a subdivision.

MR. MORGAN: And, when it is a parcel of a larger piece which is not a subdivision, that becomes a subdivision.

THE COURT: Well, suppose you owned 100 acres of land and sold 25 acres. You mean I could not buy 25 acres?

You listen to what the Court says. You will know what I am talking about.

MR. MORGAN: That situation you are talking about does not apply to our situation.

Now let me read this act.

[Section 1 of Chapter 109]

Now, the rest of this act is several pages long and I need not read it, but before you can subdivide a piece of land when there is less than five acres, you must comply with the statute, and if you don't—if you don't, their recorder of deeds or registrar of title of any county shall not record deeds or leases which attempt to convey property contrary to provisions of this act.

THE COURT: You are talking about a subdivision and we have no subdivision. There was only a sale of a portion of this piece of land—

MR. MORGAN: Your Honor, I respectfully submit—

THE COURT: that amounted to less than what the seller owns.

MR. MORGAN: Right, and I respectfully submit to your Honor and I don't think—to the contrary, what you have just described is a subdivision under the law and under the statutes.

THE COURT: All right. I have ruled. That is not a subdivision. It is merely a sale of a part or portion—

MR. MORGAN: Which the statutes forbid.

THE COURT: Land does not have to be subdivided. There is no ordinance that requires land to be subdivided in any city, town, or village in this state."

The court erroneously refused to admit the statutes into evidence and did not instruct the jury with respect to them. The court should have given an instruction regarding ordinances and statutes by adapting Illinois Pattern Instruction No. 60.01 to this case.

The defendants suggest that the transaction in the instant case comes within one of the exceptions to Section 10 of Chapter 109 listed in part (b). They also dismiss Section I.A-1 of General Ordinance 18 as being merely a definition with no mandatory effect. Section (b) provides:

"(b) The provisions of this Act do not apply and no part is required in any of the following instances:

\* \* \*

8. The sale or exchange of parcels or tracts of land following the division into no more than two parts of a particular parcel or tract of land existing on July 17, 1959, and not involving any new streets or easements or access."

However, Section (b) is not applicable because the record shows the proposed easement for the roadway was a point of contention with Village authorities who refused to approve the proposed plant. Whether the details could have been worked out at a later date and whether the Village authorities were correct in giving mandatory effect to Section I.A-1 of General Ordinance 18 is immaterial because the deed could not have been recorded as a result of sellers' failure to subdivide the property as required by Illinois law.

■■ The defendants contend the buyers were obliged to make an actual tender of the balance of the purchase price in order to put them in default; however, in the case of mutual and concurrent promises it is only necessary the plaintiffs show they were ready, willing and able to perform if the defendants were also ready to perform. (*Blunt v. Kelly* (1920), 219 Ill.App. 327.) In that case the court quoted from *Clark v. Weis*, 87 Ill. 438:

"Some misapprehension or confusion appears to have arisen from the mode of expression used in the books in treating of the necessity of a tender or offer by the parties as applicable to the case of mutual and concurrent promises. The word 'tender' \* \* \* only means a readiness and willingness, accompanied with an ability on the part

of one of the parties to do the acts which the agreement requires him to perform, \* \* \*. Such readiness, ability and notice are sufficient evidence of, and indeed imply, an offer or tender in the sense in which those terms are used in reference to the kind of agreements we are now considering.

\* \* \*

Where the evidence fails to show that the vendor could give a good title, the purchaser will not be required to make an actual tender of any balance due on the contract of purchase. *Smith v. Lamb*, 26 Ill. 397; *Gorham v. Farson*, 119 Ill. 425."

In the instant case the record shows the plaintiffs were able to furnish the balance of the purchase price only on the condition the property be subdivided in a manner which would allow the title to be recorded as provided by Illinois law. The record also shows the defendants could not provide the "recordable" trustees deed specified in the contract, and an actual tender would have been futile.

The court instructed the jury on the question of tender as follows:

"If you find that Plaintiffs failed to make a tender of the balance of money due and owing in accordance with the terms of the contract between Plaintiffs and Defendants prior to their serving notice requesting a refund of earnest money, you must find in favor of Defendants."

This instruction is erroneous because tender was not a prerequisite to a demand for a refund.

For these reasons, the judgment of the Circuit Court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

BURMAN and ADESKO, JJ., concur.