NATIONAL SUPER MARKETS, INC., Plaintiff-Appellee, v. THE FIRST NATIONAL BANK OF SPRINGFIELD, Trustee, *et al.*, Defendants-Appellants.

Fourth District   No. 15223

Opinion filed May 23, 1979.—Rehearing denied June 26, 1979.

222

Olsen & Olsen, of Springfield, for appellants.

Brown, Hay & Stephens, of Springfield (Robert A. Stuart, of counsel), for appellee.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

Plaintiff, National Super Markets, Inc. (National), filed an action for specific performance of a real estate contract. This contract was the result of National's alleged exercise of an option to purchase the property which option was granted by the defendant First National Bank of Springfield (Trustee) as trustee under a land trust created by defendant-beneficiaries Edsell and Mayme Sutton. The trial court entered judgment in favor of National ordering the Trustee to specifically perform the contract.

At the hearing, National introduced into evidence a copy of an option agreement granted to National by the Trustee which gave National the option to purchase certain real estate held in trust for the Suttons. The agreement provided for a purchase price of $4,000 with $100 presently paid as consideration for the option. The option was effective for a period of 60 days "and continuing, thereafter, until the Seller sends written notice * * * , to Purchaser to cancel this option at least 30 days prior to the cancellation date stated in said notice, * * * ."

On March 15, 1976, the agreement was modified to extend the time within which National could exercise the option from 60 days to 102 days. In exchange for this extension, the purchase price of the property was increased to $4,500 and an additional down payment of $100 was paid to the Trustee by National. These amendments were made by interlineation and each was initialed by Willard Thompson, the trust officer for the defendant Trustee. The provision of the original agreement, that the option would continue after the expiration of the initial period until 30-day notice of cancellation was received, was neither deleted nor otherwise modified.

David Clippard, a real estate representative for National, testified that prior to seeking this extension, National, with the approval of the

Suttons, had filed a petition to reclassify the property zoning from a residential to a commercial use. Prior to the expiration of the initial 60 days of the option, it became apparent to National that the reclassification might not be accomplished within the option period if the Trustee were to immediately give the 30-day notice of termination. According to Clippard, this was the basic concern of National in seeking the extension of the option period.

On April 28, 1976, attorneys for National appeared before the Springfield Plan Commission to present National's petition to rezone the subject property. No objections were raised at the hearing. On this same day, National, by a letter dated April 26, delivered notice to the Trustee of its intention to exercise the option as per the terms of their agreement.

On April 27, 1976, the Trustee sent notice to National's real estate agent, Robert Ingerson, stating that the option to purchase had expired on April 26, that the Suttons, as beneficiaries, did not intend to extend the option, and that the option was considered cancelled. National's real estate representative Clippard testified that he received the letter on April 29 or thereafter. He denied that he was aware of the notice of cancellation prior to that and admitted only that the trust officer, Thompson, mentioned the letter at the time he (Clippard) delivered notice of intent to exercise the option.

Thereafter, National advised the Trustee, by a letter delivered on June 24, 1976, that it would tender the $4,300 remaining purchase price on June 25. National tendered a check in that amount which was refused.

It is first contended by the defendants that the Trustee was not authorized to extend the option beyond 102 days or April 26, 1976, and that National should have known that the Trustee's authority was so limited. Thus, they contend that National failed to exercise the option to purchase within the time permitted.

The evidence clearly demonstrates that the Suttons authorized the execution of the original option agreement and the subsequent modifications. Both the trust officer Thompson and Edsell Sutton testified that the Trustee was authorized and directed to enter into the original agreement on January 15, 1976. Thompson testified that the beneficiaries agreed to extend the option period to April 26 in return for the increased purchase price and the additional $100 for the option itself. On the Trustee's copy of the instrument, Edsell Sutton signed his name under the written statement indicating his approval of these modifications. Although disputed by the Suttons, it is evident that the agreement as amended was approved by the Suttons as beneficiaries.

The real thrust of the defendants' argument is that the parties intended the option period, under the modified agreement, to terminate absolutely and without notice on April 26, 1976. A plain reading of the

amended agreement discloses that the option period would continue indefinitely after the expiration of the initial period (*i.e.*, on April 26 which was 102 days after the making of the agreement), until 30-day notice of cancellation was given. The trust officer and Edsell Sutton both testified, however, that it was their understanding that April 26 provided an absolute termination date. It is asserted that this understanding is evidenced by the notations made on the Trustee's copy of the agreement. On the Trustee's copy was a handwritten statement reciting that Edsell Sutton authorized the Trustee "to extend the option to 4/26/76." This provision, however, is of little aid in determining the parties' intent in view of the explicit language requiring 30-day notice of termination which was not modified in either National's or the Trustee's copy of the agreement. In any event, the Trustee's copy was never shown or presented to National.

Additionally, the defendants argue that the parties' intention, to limit the option period to April 26, is demonstrated by the date when National sought to exercise the option. Defendants contend that if National had interpreted the option period as effective beyond April 26 it would not have written the letter of intent to exercise the option on the 26th and delivered it on the 28th, since rezoning of the property had not yet been accomplished. This action by National is somewhat at odds with its supposed purpose in seeking an extension of the option. Nevertheless, although this fact weakens the evidence favoring National, we do not believe it compels a disturbance of the trial court's finding.

■■ The defendants' argument ignores the more persuasive evidence of National's interpretation of the agreement. Of greatest significance is the Trustee's failure to modify or delete the explicit requirement for continuation of the option until 30-day notice of cancellation is delivered. Thompson specifically admitted that he was never directed to nor did he consider changing or striking this language. His explanation, that his failure to delete the notice requirement was a mere oversight, is rather unsatisfactory in view of the precise modifications made within the same paragraph of the agreement. Further there was no testimony offered by either Thompson or Sutton that National was ever specifically informed of the beneficiaries' understanding that April 26 established an absolute termination date. Thus, National, which had no reason to know of the misunderstanding, should not be made to suffer the burden of any unilateral mistake or misapprehension resulting from the Trustee's failure to strike the notice language from the agreement. *Cf. Mansell v. Lord Lumber & Fuel Co.* (1932), 348 Ill. 140, 180 N.E. 774 (purchaser's knowledge of seller's misunderstanding concerning terms of real estate contract precluded relief of specific performance).

■ Finally, we believe some significance can be derived from the

amount of consideration given for the modification of the agreement. Under the unamended agreement National had a maximum period of 90 days within which to exercise the option. Accepting defendants' interpretation of the agreement National would have gained an additional 12 days to exercise the option in return for a $500 increase in the purchase price. We believe all of the above-stated circumstances warrant sustaining the trial court's determination that the option period remained effective beyond April 26. Although there may have been some misunderstanding by defendants, any misapprehension as to the meaning of the modification was the result of the defendants' lack of care and was not occasioned by any misrepresentation or other unfairness on National's part. See *Schiff v. Breitenbach* (1958), 14 Ill. 2d 611, 153 N.E.2d 549.

■■ Defendants also maintain that National, having knowledge that the property was held in a land trust, had notice of the beneficiaries' rights and interests in the property. From this, it is argued that National, having such notice, was required to negotiate or deal directly with the Suttons as beneficiaries. There is no merit to this position. The warranty deed in trust provided in essence that a person dealing with the trustee of a land trust is neither required nor privileged to examine the provisions of the trust agreement and may rely on the assumption that the trustees's acts are authorized and reflect the intent of the beneficiaries. National's negotiation with the Trustee was in accordance with the theory and purpose of the land trust. (See *Chicago Federal Savings & Loan Association v. Cacciatore* (1962), 25 Ill. 2d 535, 185 N.E.2d 670.) National was justified in relying on the plain meaning of their agreement as reflected in the written instrument.

■■ Defendants next assert that the option agreement itself was not enforceable because it was indefinite and uncertain in its terms. An option to purchase real estate is a right acquired to accept or reject a present offer which arises from an executed unilateral contract. (*Whitelaw v. Brady* (1954), 3 Ill. 2d 583, 121 N.E.2d 785.) It consists of two elements: the offer to sell which does not become a contract until accepted; and a contract to leave the offer open for a specified time. *Whitelaw; In re Estate of Girga* (1973), 15 Ill. App. 3d 916, 305 N.E.2d 565, *aff'd* (1975), 60 Ill. 2d 27, 322 N.E.2d 798.

■■ The defendants contend that the option here was fatally uncertain because the time period for the exercise of the option was indefinite. In *Whitelaw*, the court found that a so-called option was in reality merely an offer to sell since no time for exercise was specified and no consideration was given to keep the offer open. In the present case, consideration was given for the option. In addition, the time period of the option could be rendered definite and certain by the optionor's 30-day

notice of cancellation. This option contract was sufficiently specific and certain to be enforceable.

■■ The defendants alternatively contend that National did not unconditionally accept or exercise the option on the terms stated in the offer. As a general rule, an exercise of an option or an acceptance which exceeds the scope of the option will not operate to bind the offeror, but will merely result in a counteroffer. (*Seaberg v. American National Bank & Trust Co.* (1976), 35 Ill. App. 3d 1065, 342 N.E.2d 751.) National's letter of acceptance delivered to the Trustee provided:

> "Please be advised that, as per the option agreement privileges granted, National Super Markets, Inc. is hereby serving notice of its intention to exercise said purchase privilege. Per the terms of the Option Agreement, closing is set for Friday, June 25, 1976."

■■ It is obvious that the acceptance did not deviate from or exceed the terms of the option. Defendants argue, however, that the option agreement provided that the closing would take place through an escrow agent while tender of performance was actually made by National to the Trustee. This objection relates to the mode of tender and not to the form of acceptance. In any event, defendants by the Trustee's notice to National that it considered the option terminated had in effect excused any actual tender of performance. (See *Bonde v. Weber* (1955), 6 Ill. 2d 365, 381, 128 N.E.2d 883.) Thus, defendants, who raised no question or objection to National's manner of tender, but simply refused to perform, cannot rely on the absence of tender through escrow to justify their actions. The requirement of tender is satisfied if sufficiently made in the pleadings and the plaintiff's willingness and ability to perform is demonstrated. If these elements are established and the defendant has in effect repudiated the agreement objection to the actual form of tender will not preclude a remedy of specific performance. See *Lovins v. Kelley* (1960), 19 Ill. 2d 25, 29, 166 N.E.2d 69.

Defendants next contend that the agreement or contract, which resulted from the exercise of the option, was not a proper subject for specific performance because National reserved the right to cancel or rescind the exercise of the option. Paragraph 4 of the agreement stated that the defendants' lot constituted a portion of a larger tract of land which the plaintiff was seeking to purchase or lease. National reserved the right to rescind its exercise of the option in the event that "title to any portion of said larger tract shall be unmarketable, or shall require legal proceedings for Purchaser to acquire said title or lease."

■■ Defendants in essence contend that as a result of this provision specific performance must be denied since there is a lack of mutuality of remedy. The validity of a strict application of the defense of lack of

mutuality is uncertain. (See *Gould v. Stelter* (1958), 14 Ill. 2d 376, 152 N.E.2d 869.) Nevertheless, it is the defendants' position that if they sought to enforce the contract against National they would fail, since the contract was by their interpretation, terminable at the will of National. It would generally be agreed that if a plaintiff were free to terminate its obligation at will then equitable considerations would preclude the granting of specific performance. (81 C.J.S. *Specific Performance* §12(c) (1977); see *Ulrey v. Keith* (1908), 237 Ill. 284, 86 N.E. 696.) This principle is variously justified on the ground of lack of mutuality or on the basis that the plaintiff's promise in such a situation is merely illusory and fails as adequate consideration. See Note, *Specific Performance*, 1959 U. Ill. L. F. 691; Restatement of Contracts §376, comment c (1932).

■■ Regardless of this principle, however, we do not agree with defendants' characterization of Paragraph 4 as giving National unbridled discretion to terminate the contract. This contingency for rescinding the exercise of the option is subject to some objective standards, namely, that the other tracts prove "unmarketable." This condition is not within the control of National. Thus, if the defendants had sought to enforce the contract, National could only defend on the ground that the other lots were in fact unmarketable. There is, in essence, no lack of mutuality here but merely a condition precedent to National's performance. This condition is not unlike a provision that a contract is subject to a mortgage contingency clause. Such a clause will not render a contract unenforceable since the purchaser remains bound to perform subject to the condition.

■■ A related question arises, however, concerning the propriety of granting specific performance where the condition may yet occur. A condition precedent to a contract can be cause to deny specific performance. (See 81 C.J.S. *Specific Performance* §57, at 850 (1977); Restatement of Contracts §376 (1932).) Nevertheless, since this condition precedent was for the benefit and protection of National, by tendering performance National in effect waived the right to rely on the condition. There is authority that specific performance should be granted where the plaintiff has waived the benefit of a condition precedent which was for his protection. See 81 C.J.S. *Specific Performance* §57, at 850 (1977).

There are apparently no Illinois cases dealing precisely with the question presented here. Other jurisdictions, however, have addressed the issue of whether a plaintiff may waive a condition precedent in seeking specific performance of a contract which would otherwise be unenforceable due to the condition. For example, in *DiLeonardo v. Paoline* (1956), 161 N.Y.S.2d 660, the plaintiff purchaser sought specific performance of a real estate contract which provided for cancellation of the contract in the event the realty could not be rezoned. The property was

not rezoned. The seller defended on the ground that the contract lacked mutuality since he would not be able to enforce the contract against the buyer. The New York court noted that the rezoning contingency was for the buyer's benefit. It concluded that the buyer was entitled to waive this condition and seek specific performance and accept the property as is.

In *Caras v. Parker* (1957), 149 Cal. App. 2d 621, 309 P.2d 104, the real estate contract was made contingent upon the buyer's securing city approval to subdivide the subject property. Without securing this approval, the buyer deposited the balance of the purchase price in escrow. The court held that by tendering performance the buyer had waived the contingency and the contract was, therefore, enforceable and a proper subject for specific performance.

In *Nyder v. Champlin* (1948), 401 Ill. 317, 81 N.E.2d 923, the Illinois Supreme Court affirmed a decree of specific performance in favor of a purchaser who remained willing and able to perform despite his failure to obtain a mortgage for the amount specified in the contract's mortgage contingency clause. The focus of the opinion dealt with a rejection of the defense of lack of mutuality. Nevertheless, implicit in the court's reasoning was the conclusion that specific performance would not be denied, even though a condition precedent to the plaintiff's performance had not been met, since the plaintiff remained willing and able to perform. Similarly, in the instant case the condition concerning the other tracts of land could have relieved National of its contractual liability. However, National, by tendering the purchase price, elected not to avail itself of this contingency and it was in effect waived. That condition, therefore, will not operate as a bar to specific performance.

Finally, defendants maintain that the agreement between the parties is not enforceable because of conflicting terms within the agreement. Paragraph 3 of the agreement provided that "seller agrees to make conveyance * * * to Purchaser by General Warranty Deed." A subsequent clause inserted by the Trustee stated that "[t]he First National Bank of Springfield is acting as Trustee of an Illinois Land Trust and as such, makes no warranties or covenants as to such title held by it as trustee." Because of these conflicting provisions, defendants contend the agreement could not be specifically enforced unless the court rewrote the contract, which it is clearly not permitted to do. (*Bismarck Hotel Co. v. Andalman* (1947), 331 Ill. App. 585, 73 N.E.2d 786.) Specific performance is an appropriate remedy only where the contract is certain, definite, and unequivocal in its terms. *Cefalu v. Breznik* (1958), 15 Ill. 2d 168, 154 N.E.2d 237; *Lencioni v. Brill* (1977), 50 Ill. App. 3d 802, 365 N.E.2d 1169.

In *Threlkeld v. Inglett* (1919), 289 Ill. 90, 124 N.E. 368, the parties' failure to reach agreement on the form of deed warranted the trial court's refusal of specific performance. In that case, the vendors were to supply a

deed containing provisions similar to those used in specified counties and satisfactory to the vendee. The court held this to be an agreement to make a deed. Since the parties had not reached agreement on the form of the deed and there was no established uniform deed in the specified counties, the contract was insufficiently certain in its terms to permit a decree of specific performance.

In *Threlkeld*, the plaintiff had argued that it could waive provisions in the deed it sought which were not specifically agreed to by Inglett. The court agreed that such a waiver could be made by the plaintiff, but it found that Threlkeld had not done so. In the instant case, however, National in its complaint merely sought to have defendants compelled to deliver a "sufficient deed of conveyance." Thus, by its pleadings National accepted and acknowledged as part of their contract the Trustee's disclaimer of warranties of title. National, therefore, was simply demanding performance in accordance with the defendants' agreement. The order of the court similarly ordered defendants to deliver "a good and sufficient deed of conveyance."

Finally, the defendants' refusal to perform was not premised upon an objection to or protest of this warranty deed provision. National, by its waiver of the provision, removed any ambiguity surrounding these apparently conflicting clauses. Thus, defendants will not be heard to complain that the court rewrote their contract to compel performance different from that which they had agreed to do. (*Cf. Favata v. Mercer* (1951), 409 Ill. 271, 99 N.E.2d 116.) We conclude that the order of the trial court granting National specific performance of the contract was proper in all respects and we, therefore, affirm.

Affirmed.

TRAPP and GREEN, JJ., concur.