EUGENE W. FOX, Plaintiff-Appellant, *v.* JAMES R. LAWSON, Adm'r of the Estate of Helen G. Curtis, Deceased, Defendant and Third-Party Plaintiff-Appellee.—(W. WEGER ALLISON *et al.*, Third-Party Defendants.)

Fifth District   No. 78-522

Opinion filed June 7, 1979.—Rehearing denied September 27, 1979.

Robert L. Douglas, of Robinson, for appellant.

John F. Borden, of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Eugene W. Fox, brought suit against defendant, Helen Curtis, in the circuit court of Crawford County seeking specific performance of an alleged oral contract to convey real estate to plaintiff. Defendant counterclaimed against plaintiff and filed a third-party action against other interested parties, who are not involved in this appeal, to quiet title and to eject plaintiff from the property. Following a bench trial, judgment was entered in favor of defendant and plaintiff appealed.

In 1968, Helen Curtis, a widow, signed a contract for deed to purchase a 340-acre farm, the subject of this litigation, from a Weger Allison. By May 1975, when Mrs. Curtis retired to the farm, she had paid approximately one-half of the purchase price on the contract. Realizing that she was unable to care for the farm herself, she contacted a farmer, John Vineyard, about entering into a contract whereby he would pay the balance of the contract for deed, operate and care for the farm, provide her with some income and benefits, and then eventually own the farm. A tentative draft of the contract was prepared, but no definite agreement was ever reached. Defendant discussed this matter by telephone on a number of occasions with her sister, Vera Fox, and her sister's husband,

the plaintiff, who lived in California. Plaintiff claimed that after the negotiations with Mr. Vineyard were terminated defendant offered to make a similar arrangement with plaintiff because she was afraid of being unable to make the contract payments. He testified that he and defendant subsequently made an oral agreement on the telephone between July 5 and August 31, 1975, whereby he, and apparently his wife and family, would acquire a one-half interest in the farm and receive the remaining half interest upon her death in exchange for their paying the balance of the contract for deed and paying one-half the taxes for each year. Apparently the only agreement made concerning the division of profits was that plaintiff would keep the income from his cattle and that defendant would receive the crops from the property. Plaintiff indicated that the above terms were the complete embodiment of the agreement.

Vera Fox, plaintiff's wife, testified that the terms of the agreement were as follows:

"[S]he [defendant] asked us to come back and pick up the balance of the contract and pay it off * * * for half of the property, and then on her death her part would come to us."

She said this agreement was probably made in the latter part of July of 1975.

Helen Curtis testified that during the summer of 1975 she had $10,000 in a savings account and that she never told plaintiff she was unable to make the payments on the contract. She stated that she discussed the Vineyard arrangement with plaintiff on the telephone and that he told her she was giving too much away. He then added: "Say no more, I'm on my way." It was Mrs. Curtis' understanding that plaintiff wanted to come to Illinois and negotiate a contract and not that the parties had made an agreement over the telephone.

Plaintiff and his wife sold their home in California, and came to defendant's farm on November 19, 1975, accompanied by their adult son and his family. Shortly after their arrival, defendant took plaintiff and his wife to Farmers Bank in Palestine, Illinois, and introduced them to Owen Landrith, the bank president. The three of them indicated that they wanted a written agreement concerning the property and defendant suggested that a trust arrangement could possibly be worked out. Landrith did not recommend a trust; plaintiff further indicated that he was not interested in such an arrangement; and the discussion ended.

Defendant testified that she made numerous other efforts to negotiate a written contract with plaintiff but that he refused or was too busy to talk. Plaintiff acknowledged that a document was supposed to be drafted concerning an agreement but stated that they were unsuccessful in getting together. Defendant denied that the parties ever made an oral agreement for a transfer of the property to plaintiff.

While living on the farm, plaintiff made various improvements to the property, but most improvements were made to enhance the value of his house trailer and personal property. Among other things, he installed a septic tank and leach lines for the house trailer in which he and his wife lived, put up a fence to keep the cattle he had purchased from roaming on the crops, did some repairs to the main farm house, painted the chicken house, wired the house trailer for electricity and helped with the general maintenance of the farm. Notwithstanding the improvements and labor, the farm, which was already in relatively poor condition, continued to deteriorate.

Defendant testified that plaintiff, contrary to defendant's instructions, provided funds for the installment payments for the years 1975 and 1976 and for one-half the real estate taxes for 1974 and 1975, by depositing the money in her account. She then directed her bank not to accept any future deposits in her account from plaintiff.

Roy Midgett, a tenant farmer who pastured his cattle on defendant's farm during 1975 and part of 1976, testified that Mrs. Curtis informed him that her brother-in-law was coming back to Illinois and was going to be a "half owner-manager" of the property. She also informed him that plaintiff was to make the payments and pay all the taxes and receive in exchange one-half ownership during her lifetime and full ownership after her death. Later, in December of 1975, Midgett went to see Mrs. Curtis about moving his cattle, but was told to see plaintiff because he was half owner and manager.

Clarence Bell, a retired farmer who had been employed to "look after" the farm property, testified that defendant informed him in the fall of 1975 that plaintiff and his wife were moving to Illinois; were going to finish making the payments on the farm; and would receive the entire property after her death.

The testimony also established that in April of 1976, Mr. Midgett and another farm tenant received notices to terminate their respective farm tenancies. These notices, signed by defendant, included language that the tenancies were being terminated with respect to "the property of Helen Curtis and Eugene Fox."

Defendant testified that late in the summer of 1976, she advised plaintiff that she was thinking of selling the farm because the proposed arrangement would not work. Plaintiff then informed defendant that he would be interested in purchasing the farm if the terms were not too high. On September 27, 1976, defendant entered into a written contract for the sale of the property to a Billy Walborn. Three days later, plaintiff filed a *lis pendens* notice and thereafter commenced this action.

The trial court held that plaintiff had no interest in the property; that defendant was entitled to possession subject to the rights of the sellers in

the contract for deed and others not relevant to this controversy; and that plaintiff must remove his livestock and personal property. The court further ordered defendant to reimburse plaintiff for the tax and contract payments he made for 1974 through 1976. Mrs. Curtis died 10 days after judgment of the court and the personal representative of her estate has been substituted as the party defendant.

■■■ Plaintiff's sole contention is that the trial court erred in refusing to order specific performance of an oral contract to convey real estate. This contention is based upon his position that the evidence established the partial performance of the contract sufficient to remove it from the Statute of Frauds. We first note that the application of the doctrine of part performance and the remedy of specific performance presupposes the existence of an enforceable agreement. (*Culbertson v. Carruthers*, 66 Ill. App. 3d 47, 383 N.E.2d 618 (5th Dist. 1978); *McDaniel v. Silvernail*, 37 Ill. App. 3d 884, 346 N.E.2d 382 (4th Dist. 1976).) The burden of proving the existence of a contract to be specifically performed is upon the party seeking to enforce it. (*Harper v. Kennedy*, 15 Ill. 2d 46, 153 N.E.2d 801 (1958).) Plaintiff, we believe, has failed to establish the existence of such an agreement, and therefore the judgment rendered in favor of defendant was not against the manifest weight of the evidence. *Culbertson v. Carruthers.*

■■ For an oral agreement lying allegedly outside the Statute of Frauds to be valid, it must still meet the same requirements as found in a written contract. (*Ashline v. Verble*, 55 Ill. App. 3d 282, 370 N.E.2d 613 (5th Dist. 1977).) It must contain the names of the parties, a description of the property to be conveyed and the price and terms of the sale. (*McDaniel v. Silvernail.*) Furthermore, before a contract to convey realty will be specifically enforced, it must appear to be certain, definite and unequivocal in its terms. *Wilger v. Wilger*, 409 Ill. 58, 98 N.E.2d 716 (1951); *McDaniel v. Silvernail.*

In the present case it is clear that many of these component terms were either missing or too vague to enforce. First, the testimony never conclusively established the ultimate purchaser of the property. It was never determined whether the purchaser would be plaintiff, or plaintiff and his wife, or even plaintiff and his entire family. Second, the testimony never established the date plaintiff was to receive a half-interest in the farm. Ordinarily, a real estate sales contract will specify the date of transfer of title, but in this case, that date was never agreed upon. Third, the terms of the alleged agreement were never conclusively settled. Plaintiff testified that he was to pay all the remaining installments on the contract and pay one-half the taxes and receive in exchange a one-half interest in the property and, upon defendant's death, the other half by devise. Mr. Bell, a tenant farmer, however, understood the terms

differently as explained to him by defendant. He believed that plaintiff was to make all the contract payments and acquire title to the entire farm only upon the death of defendant. Mr. Midgett, also a tenant, testified that plaintiff agreed to pay all of the taxes whereas plaintiff testified otherwise. Fourth, the parties never entered into any agreement concerning the maintenance or management of the farm, the paying of insurance and other expenses, or the sharing in the profits or losses other than the agreement concerning the raising of cattle and the ownership of the crops. Lastly, we note that plaintiff and his wife were never able to specify a date when the contract was actually made. It is clear from the above that even if a preliminary agreement were ever reached between the parties its terms were so vague and uncertain as to be incapable of enforcement by a court.

■ Furthermore, a careful reading of the testimony of the parties suggests that the parties were merely involved in negotiations leading toward the development of a contract. (*Weir v. Weir*, 287 Ill. 495, 122 N.E. 868 (1919).) It is therefore imperative to differentiate between preliminary discussions and an actual binding agreement encompassing definite terms. (*Culbertson v. Carruthers.*) Defendant testified that at all times she attempted to negotiate a contract with plaintiff, but that he never had time to sit down and work out a definite arrangement. Although plaintiff testified that a contract was agreed upon, the surrounding circumstances clearly indicated that plaintiff was involved in preliminary negotiations. He acknowledged that the parties intended to put an agreement in writing. In addition, he and his wife accompanied defendant to the bank to discuss the formation of a written arrangement concerning the property. We believe that plaintiff's participation in events leading to the execution of a formal agreement suggests not only that the parties were negotiating a contract but that the reduction of an agreement to writing was viewed as a condition precedent to the vesting of their respective rights and duties even though certain terms may have been agreed upon. See *Brunette v. Vulcan Materials Co.*, 119 Ill. App. 2d 390, 256 N.E.2d 44 (1st Dist. 1970).

Plaintiff relies on the testimony of the two farm tenants, Mr. Midgett and Mr. Rice, to establish the existence of the alleged contract. Both tenants stated that Mrs. Curtis told them that plaintiff was returning to Illinois, was going to make the payments on the farm and was going to receive a property interest in return. These statements, however, can be reasonably interpreted as a declaration of Mrs. Curtis' intention to convey the property to plaintiff in the future and not as an indication of an existing contract. See *Wilger v. Wilger*, 409 Ill. 58, 98 N.E.2d 716 (1951); *Weir v. Weir.*

Plaintiff also points to the various improvements he made on the farm

and the payment of some of the contract installments and taxes as evidence of an outstanding agreement between the parties. The various improvements were not substantial in comparison to the value of the farm, were made mostly for the benefit of plaintiff's trailer home and other property, and were nothing more than what a tenant for a term of years would make. Furthermore, the trial court could reasonably determine that the various payments made by plaintiff were contrary to the wishes of defendant and indicated only plaintiff's desire to pressure defendant into conveying the property.

Although there was some evidence presented which appeared to support plaintiff's position, the trial court as trier of fact had the opportunity to judge the credibility of the various witnesses. Considering the substantial evidence favoring defendant's interpretation of events, we cannot say that the judgment was contrary to the manifest weight of the evidence.

For the reasons stated above, the judgment of the circuit court of Crawford County is affirmed.

Affirmed.

KUNCE and KASSERMAN, JJ., concur.