JOSEPH GIDDAN & SONS, Plaintiff-Appellant and Cross-Appellee, v. NORTHBROOK TRUST & SAVINGS BANK, as Trustee, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (3rd Division)   No. 85—3151

Opinion filed November 12, 1986.—Rehearing denied December 30, 1986.

McNAMARA, J., dissenting.

Robert W. Gettleman, Georgann Joseph, and Jack M. Siegel, all of Chicago (D'Ancona & Pflaum, of counsel), for appellant.

Theodore A. Shapero and James A. Flesch, both of Rudnick & Wolfe, of Chicago, for appellees.

JUSTICE WHITE delivered the opinion of the court:

The essential facts of this real estate action are not in dispute. Defendants, Northbrook Trust and Savings Bank, as trustee under trust number 471, and Arthur S. Johnson, Elsie N. Johnson, Phillip A. Johnson, and Carol Ann Piggott, as beneficiaries of that trust, are the legal and beneficial owners of two adjacent parcels of real estate located at the southeast corner of the intersection of Lake-Cook Road and Waukegan Road in the village of Deerfield, Cook County. The parcels were designated parcel A and parcel B on the plat of Phil Johnson's subdivision. Parcel A is divided into subparcels: the "Restaurant portion" and the "Remainder of Parcel A." Plaintiff is a partnership engaged in the business of real estate development. On January 11, 1977, plaintiff and defendants signed an option agreement giving plaintiff the option to purchase parcel B and the remainder of parcel A for a stated consideration. In this option, the parties agreed that "Parcel A is presently zoned as a Business District while Parcel B is presently zoned as a One-Family District. The Undersigned hereby undertake to obtain rezoning of Parcel B to Business District." The option period commenced upon its signing and "expired on the later to occur of (1) the expiration of six (6) months after final action (whether favorable or unfavorable) by the Board of Trustees of the Village of Deerfield with respect to such zoning petition and (2) January 1, 1978." The agreement also provided for extensions of the option period. It is not questioned that the actions taken pursuant to this agreement were taken within the option period as extended.

According to the agreement, plaintiff's option to purchase was "on the terms and conditions set forth in the real estate sales contract attached." In the attached contract, defendant Northbrook Trust and Savings Bank, as trustee, agreed to convey the subject property to plaintiff "by recordable trustees deed." The trial court found that on September 3, 1982, plaintiff exercised its option by paying defendants $10,000. The provisions of the option agreement named the parties; described the subject matter real estate; and fixed the purchase price, the time for payment, and the manner of conveyance. Had nothing more been said in the agreement when the option was exercised, a valid contract for sale of the real estate undoubtedly would have emerged, requiring defendants to convey title to the subject premises "by recordable trustees deed."

The same words, "recordable trustees deed," were used in the real estate contract involved in *Maros v. Jones* (1972), 6 Ill. App. 3d 950, 951, 286 N.E.2d 819. Both *Maros* and this case involve

a contract by an owner to subdivide land into two or more parts by conveying a portion of the land to a buyer. Section 1 of "An Act to revise the law in relation to plats" (Plats Act) (Ill. Rev. Stat. 1969, ch. 109, par. 1) provides in relevant part, "whenever the owner of land subdivides it into 2 or more parts *** he must have it surveyed and a plat thereof made." In *Maros* this court held that this section required that the subject property be subdivided before good title may be transferred. Section 5a of the Plats Act (Ill. Rev. Stat. 1975, ch. 109, par. 5a) provides that the recorder of deeds "shall not record deeds or leases which attempt to convey property contrary to the provisions of this Act." It is further provided in the Illinois Municipal Code:

"The corporate authorities may provide, by ordinance, that any map, plat, or subdivision of any *** parcel of land, shall be submitted to the corporate authorities *** for their *** approval. In that case no such map, plat, or subdivision shall be entitled to record in the proper county, or have any validity until it has been so approved. *** Until approved by the corporate authorities, *** no such map, plat or subdivision plat shall be entitled to record in the proper county, or have any validity whatever." Ill. Rev. Stat. 1975, ch. 24, par. 11—15—1.

Pursuant to and supplementing these Illinois statutes, the village of Deerfield enacted ordinances defining "subdivision" and describing the recording requirements:

"Subdivision—the division of a parcel of real estate not previously subdivided, into two or more lots or parcels as to require the preparation and recording of a plat or subdivision." (Deerfield, Ill., Municipal Code ch. 9, par. 9.101 (1963) (as amended).)

"In the case of all lots of record as defined herein, a division or separation of or from such Lot of Record by conveyance of record shall be deemed a subdivision or resubdivision within the terms of this ordinance and require the preparation and recording of a plat of subdivision or resubdivision as the case may be, in accordance with the terms of this Section." (Deerfield, Ill., Municipal Code ch. 9, par. 102a (1963) (as amended).)

We conclude that sections 1 and 5a of the Plats Act, section 11—15—1 of the Illinois Municipal Code, and chapter 9 of the Deerfield Municipal Code are applicable to the facts of this case. On the basis of this statutory scheme, we hold that defendants as conveyors by recordable deed were required to have the land surveyed, to have a

plat made, and to have the plat approved by the corporate authority before the deed was recordable. By agreeing to deliver a "recordable deed," defendants obligated themselves to comply with the lawful conditions imposed by the village of Deerfield upon the subdivision.

On October 25, 1982, defendant Northbrook Trust and Savings Bank, on behalf of sellers and plaintiff, filed with the village of Deerfield a petition for subdivision together with a preliminary plat of subdivision. The board of trustees of the village voted to grant the petition subject to six requirements, only two of which are relevant here:

"1. No additional new curb cuts be permitted on Lake-Cook Road. Access to Lot 2 *** must be through the existing Phil Johnson Restaurant entrance.

2. Appropriate easements be established across the restaurant lot so that the Lake-Cook and Waukegan Road entrances can be used."

Defendants' refusal to establish such easements and deliver a recordable deed to plaintiff led to this litigation. Defendants contend: "The Village's requirement that the parties establish appropriate easements across the restaurant site directly contradicted plaintiff's express representation to the Johnsons that no restrictions or limitations would be placed on the restaurant site as a result of the subdivision. Furthermore, although the parties had previously negotiated the location of cross easements, they had been unable to reach an agreement concerning their location. Consequently, the Johnsons tendered to plaintiff the earnest money that it had previously paid them."

It is the position of plaintiff that defendants, by agreeing to deliver a recordable deed, were required by the contract to have the subdivision plat approved by the village of Deerfield. Defendants argue and the trial court held that the parties had no enforceable contract. The real estate sales contract, which was made part of the option agreement, provided:

"10. At the closing, the parties will execute and deliver to each other recordable cross easements over the subject real estate and the Restaurant Portion (as defined in the option agreement to which this contract is an exhibit) in order to unify the plan for parking and ingress and egress on the subject real estate and the Restaurant Portion, and to obtain the maximum lawful number of parking spaces."

The trial court ruled that paragraph 10 contained critical terms of

the contract and, "although the parties negotiated the location of the cross easements required by paragraph 10 *** through no fault of either party, they never reached an agreement concerning their location." Defendant contends that because of this lack there was no enforceable contract.

■ Defendant cites no case which holds that a contract for the sale of real estate which provides for cross-easements is rendered void if the contract does not fix the exact location of the easements. Such a result would be unduly harsh here, where plaintiff is willing to accept any location selected by defendants. The cases gathered in the American Law Reports (24 A.L.R.4th 1053 (1983)) in which the location of an easement is at issue because the grant creating the easement does not fix the location, indicate that is not the law. Where a deed conveys an easement over certain land, but fails to locate the exact line over which the easement extends, the location can be determined in a suit brought for that purpose. (*Shedd v. American Maize Products Co.* (1915), 60 Ind. App. 146, 108 N.E. 610.) Where an easement by deed is undefined as to location and width, these details can be ascertained and fixed by the court. *Vallas v. Johnson* (1979), 72 Ill. App. 3d 281, 282, 390 N.E.2d 939.

■ Defendants' contractual obligation to deliver to plaintiff a recordable deed is an obligation to deliver a deed with the provisions, the surveyor's plat, and the corporate approval required for recordation. Approval of the village of Deerfield was conditioned upon establishing easements across the restaurant lot. Paragraph 10, wherein the parties agreed to deliver cross-easements, underscores the plaintiff's entitlement to the easements.

For the foregoing reasons, the order appealed from is reversed and the case is remanded with directions to enter judgment ordering that, upon payment of the purchase price, defendants deliver to plaintiff a recordable trustees deed that meets the subdivision requirements of the village of Deerfield. We do not disturb the findings of the trial court that the failure of the contract to fix the location of the easements was through no fault of either party and therefore award no damages for defendants' failure to convey.

Reversed and remanded.

RIZZI, P.J., concurs.

JUSTICE McNAMARA, dissenting:

I respectfully dissent from the majority's conclusion that an enforceable contract exists. I would affirm the holding of the trial court that the contract lacks an essential term with regard to the cross-easements.

Any possible obligation to establish easements stems first from paragraph 10 of the contract and then from the relevant municipal action. The majority focuses almost exclusively on the municipal action which required that "appropriate easements" be established prior to recording the deed. The majority views paragraph 10 as language which merely "underscores the plaintiff's entitlement to the easements." Neither this reasoning nor the municipal action addresses defendants' right to a cross-easement under paragraph 10 of the contract. I believe that the validity of the contract must be analyzed first in light of paragraph 10, before analyzing any obligations imposed by the municipal recording requirements. If the contract is unenforceable due to the absence of a material term, it is irrelevant what duties arise under the municipal ordinance. Requirements imposed by the village should not function as new contractual obligations which correct material defects in the contract. A municipality does not have the power to convert a defective contract into an enforceable contract simply by imposing recording requirements. Thus, I find that the basis of the majority's analysis, *i.e.*, defendants' contractual obligation to deliver a "recordable trustees deed," fails to answer the underlying question of whether an enforceable contract exists.

Whether or not an enforceable contract exists is dependent upon the intent of the parties, as evidenced by the language of the document. (*Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615.) The determination of this issue may be a question of law or a question of fact. (*Terracom Development Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739, 365 N.E.2d 1028.) If the terms of the alleged contract are unambiguous, then the intent of the parties must be ascertained solely from the words used and is a question of law. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 469 N.E.2d 178; *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615.) If the language is ambiguous, however, extrinsic evidence is admissible to determine the parties' intent and the interpretation of the language is a question of fact. (*Chicago Principals Association v. Board of Education* (1980), 84 Ill. App. 3d 1095, 406 N.E.2d 82.) Where the material terms are indefinite and ambiguous, the contract is unenforceable. (*Morey v. Hoffman* (1957),

12 Ill. 2d 125, 145 N.E.2d 644; *Stender v. National Boulevard Bank* (1983), 114 Ill. App. 3d 1041, 499 N.E.2d 873.) Moreover, any ambiguity in the language of the contract should be resolved against the drafter of the document. (*Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 457 N.E.2d 66.) In determining the existence of a contract where extrinsic evidence is admitted, the findings of fact of the trial court will be upheld unless they are against the manifest weight of the evidence. *Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 481 N.E.2d 712.

Furthermore, a judgment requiring defendant to deliver a recordable deed to plaintiff is the relief awarded in a specific performance action. (See *National Super Markets, Inc. v. First National Bank* (1979), 72 Ill. App. 3d 221, 390 N.E.2d 602.) In the present case, the trial court properly concluded that plaintiff did not seek a declaration of rights, but instead sought specific performance. (See *Berk v. County of Will* (1966), 34 Ill. 2d 588, 218 N.E.2d 98; *Aebischer v. Zobrist* (1977), 56 Ill. App. 3d 151, 371 N.E.2d 1003.) The burden of proving the existence of a contract to be specifically performed is upon the party seeking to enforce the contract. (*Fox v. Lawson* (1979), 76 Ill. App. 3d 806, 395 N.E.2d 588.) Specific performance is an appropriate remedy only where a contract is definite, certain, and unequivocal in its terms (*National Super Markets, Inc. v. First National Bank* (1979), 72 Ill. App. 3d 221, 390 N.E.2d 602), so that the court may determine with some exactness what act defendant must perform (*Stender v. National Boulevard Bank* (1983), 114 Ill. App. 3d 1041, 499 N.E.2d 843). In reviewing a denial of specific performance, a trial court's decision will not be disturbed, absent an abuse of discretion. *Foster Enterprises, Inc. v. Germania Federal Savings & Loan Association* (1981), 97 Ill. App. 3d 22, 421 N.E.2d 1375.

Here, paragraph 10 of the contract states that, at "the closing, the parties will execute and deliver to each other recordable cross easements *** in order to unify the plan for parking and ingress and egress *** and to obtain the maximum lawful number of parking spaces." Where the parties to an agreement indicate an intention to leave an essential term for future negotiations, there is no binding contract. (*Morey v. Hoffman* (1957), 12 Ill. 2d 125, 145 N.E.2d 644; *Hintz v. Lazarus* (1978), 58 Ill. App. 3d 64, 373 N.E.2d 1018.) Such a contract is too indefinite and thus unenforceable. (*Morey v. Hoffman* (1957), 12 Ill. 2d 125, 145 N.E.2d 644; *Stender v. National Boulevard Bank* (1983), 114 Ill. App. 3d 1041, 499 N.E.2d 873.) Under paragraph 10 of the contract at issue, the parties failed

to state the location of the cross-easements, leaving that for a future agreement which would occur after the signing of the contract and prior to closing. The term is essential because, without it, plaintiff had no access to the remainder of parcel A or to parcel B from both Lake-Cook and Waukegan Roads and defendants had no additional parking for their restaurant patrons on the land being sold. The absence of the term defeats an important purpose underlying the contract for the sale of real estate. Because the location of the easements was essential to the proposed contract and the parties indicated their intent to leave it for future negotiations, as a matter of law the failure to agree on this term precluded the formation of a contract.

However, even if it were determined that paragraph 10 was ambiguous and did not sufficiently state the parties' intent, the extrinsic evidence presented supports the trial court's factual finding that there was no agreement between the parties. Plaintiff's own attorney, Nathaniel Sack, who drafted the document, testified that cross-easements could not be granted when the proposed contract was signed because the plan to which paragraph 10 referred did not exist. In fact, the unified plan for additional parking, ingress and egress, never came into being and the commercial zoning was never obtained. Sack also testified that paragraph 10 was an "agreement to agree," and before the contract could be "consummated," the parties had to enter into a subsequent written agreement granting cross-easements. In addition, defendant Arthur Johnson testified that in his opinion the parties had a contract but the parties had to figure out the easements to allocate shares of parking spaces. Furthermore, in July 1981, defendants submitted an exhibit with their petition for rezoning to the planning commission for the village of Deerfield entitled "Proposed Johnson Property Cross Easements." This exhibit stated that it was "an outline of the proposed terms of cross easements to be granted." The parties never finalized this contract term.

The majority states that it would not find the contract void because: "Such a result would be unduly harsh here, where plaintiff is willing to accept any location selected by defendants." This reasoning ignores the fact that the contract involves cross-easements, not merely one easement granted by defendants for the benefit of plaintiff. The contract provided for cross-easements which would unify the planned development for both maximum parking space and for ingress and egress. Both purposes are specified in paragraph 10, and plaintiff's willingness to accept "any" easement now indicates a

change of intent and a failure to give effect to the cross-easement which was to benefit defendants. In construing a document, the intention of the parties at the time they executed the document is controlling. (*Chemical Petroleum Exchange, Inc. v. Metropolitan Sanitary District* (1980), 81 Ill. App. 3d 1005, 401 N.E.2d 1203.) At the time the contract was executed, plaintiff did not manifest an intention to accept "any" easement offered by defendants.

The majority also holds that a court can ascertain and fix the exact location of an easement, and thus the contract need not be considered void. While a court may ascertain the location of an easement in certain situations, the present case is not included. Cases where a court fixes the location of an easement typically involve a grant of a right-of-way which provides for a designation of location in the future by only one party. (See generally Annot., 24 A.L.R.4th 1053, sec. 7 (1983).) Here, the language provided for a designation of location in the future by both parties with regard to both cross-easements. Moreover, there was no evidence presented concerning the location of cross-easements which would unify the plan for both maximum parking space and for ingress and egress. Thus a court could have great difficulty determining where the parties intended the easements to be located.

The majority's reliance on the holdings in *Vallas v. Johnson* (1979), 72 Ill. App. 3d 281, 390 N.E.2d 939, and *Shedd v. American Maize Products Co.* (1915), 60 Ind. App. 146, 108 N.E.2d 610, is misplaced. In *Vallas* there was no dispute about whether the deeds at issue granted an easement. Unlike the present case, the *Vallas* court merely had to determine, by considering the parties' actual usage, the width of an easement which all parties agreed had been granted. *Shedd* did not involve a contract requiring the parties to enter into a subsequent written agreement to grant and identify cross-easements. Moreover, *Shedd* also recognized that an easement which is not specifically located and described is too indefinite to be established and protected.

For the foregoing reasons, I believe the trial court did not abuse its discretion in denying specific performance and its judgment should be upheld.

*For convenience of the Appellate Court in reading this reduced copy of plaintiff's Exhibit 10, defendant's "Restaurant Portion" is designated by broken lines, the "Remainder of Parcel A" and Parcel B are designated by double line, and the existing curb cuts, appearing in plaintiff's Exhibit 1, are superimposed.