**Maurice Young, Alex Topp and Herbert Lakin, a Partnership, Doing Business As Laktop Company, Plaintiffs-Appellants, v. John C. Wilkinson, Defendant-Appellee.**

### Gen. No. 47,533.

First District, First Division.

May 18, 1959.

Rehearing denied June 12, 1959.

Released for publication September 15, 1959.

Arthur Abraham, Israel Dordek, of Chicago, for plaintiffs-appellants.

Block and Solomon, of Chicago (Irving L. Block, of counsel) for appellee.

JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiffs appeal from an order dismissing their amended complaint which combined a plea for specific performance of a contract with a count in the nature of a creditor's bill.

The contract provided for the defendant to purchase lots in which the plaintiffs had leasehold interests. The lots were grouped in parcels designated as 1, 2 and 3. The original complaint alleged that the defendant repudiated the contract a few days before December 1, 1957, the date it was to become effective, and that the plaintiffs were ready and willing to comply with its terms; they tendered performance of all the provisions binding upon them.

The defendant moved to dismiss on several grounds, among them that the plaintiffs had failed to allege that they had procured the consent of the lessor of parcel 3 to their assignment of that leasehold, that the plaintiffs, therefore, were unable to comply with one of their obligations and were not entitled to specific performance. The court sustained the motion upon this point and the order of dismissal was entered on February 28, 1958. Thereupon, on that same day, the plaintiffs secured the written consent of the lessor. It was attached as an exhibit to the amended complaint.

The defendant again moved to dismiss on the same ground, alleging that the exhibit showed that the lessor's consent was not obtained until February 28, 1958, which proved that the plaintiffs were not ready to comply with the terms of the contract on December 1, 1957. The motion was sustained. The defendant on appeal has advanced other objections to the

307

amended complaint which we will not consider; they were not included in his motion, and, in fact, were denied upon his previous motion to dismiss the first complaint.

The controversy centers around the following portion of the contract, particularly 2(c):

"1. The buyer agrees to buy at the price of $60,-000.00 the leaseholds herein referred to as parcels 1, 2 and 3, and the seller agrees to sell said leaseholds at said price and to assign or cause to be assigned to the buyer, or his nominee, good title to all of the rights, title and interest of the seller to said leaseholds by good and sufficient instruments of assignment.

"2. Said assignments shall be subject to

 (a) All of the terms and condition of 'Agreement for Sale of Leasehold' between Avery Building Corporation and Laktop Corporation hereinbefore referred to under Parcel 1.
 (b) Existing leases, if any, of the stores included under Parcel 1.
 (c) Consent of Isadore Goldstein, lessor, to assignment of lease identified as Parcel 3.
 (d) All unpaid general taxes, special assessments, water taxes and all restrictions of record."

The four subsections (a), (b), (c) and (d) are governed by the preceding words: "shall be subject to." The plaintiffs' position is that the defendant was accepting the assignments subject to or limited by the subsections; that there is nothing in the contract which said that Goldstein's consent had to be procured as a condition precedent and that there was nothing which said the plaintiffs were obligated to procure it.

■ The defendant's position is that although the words *subject to* may mean *subordinate to* when applied to (a), (b) and (d), they mean *conditioned upon* when used in association with (c); that is, that the plaintiffs' assignment of parcel 3 was conditioned upon securing the consent of Goldstein, and since the plaintiffs had to assign their leasehold it was their responsibility to secure the consent. The defendant bolsters his interpretation of the contract by stating that it was prepared by the plaintiffs' counsel and should be construed most strictly against the plaintiffs; that the court should look to all the facts surrounding the execution of the contract and place itself in the position of the contracting parties so that it might better understand the intent of the language used. However, there is little in the amended complaint which discloses the position of the parties; there is less which reveals the circumstances surrounding the execution of the agreement and there is nothing which tells who drafted it. Under the motion to dismiss we can only consider the facts which were well pleaded in the amended complaint.

■ The only reference in the contract to the consent of Goldstein is in 2(c). There it is listed among the things to which the assignments are subject. One of the definitions of *subject to* is *subordinate or inferior* to; this is the customary meaning of the phrase when it is used in association with deeds, mortgages, leases and taxes. 40 W. & P.; Harley v. Magnolia Petroleum Co., 378 Ill. 19; Englestein v. Mintz, 345 Ill. 48; Black's Law Dictionary, 1951. In the context in which it appears, (c) may be construed to be a limitation or a qualification upon the assignment the buyer was to receive.

Further weight to this construction is lent by § 3 of the contract:

"3. Upon consummation of this sale seller shall deliver to buyer:

(a) 'Principal Lease.'

(b) Original 'Agreement' for sale of leasehold between Avery Building Corporation and Laktop Corporation dated July 22, 1955, and assignment of seller.

(c) Bill of Sale referred to in said 'Agreement' for sale of leasehold.

(d) Lease to Parcel 2 and assignment of seller.

(e) Lease to Parcel 3 and assignment of seller.

Buyer shall deliver to seller:

(f) General release from Avery Building Corporation to seller from any claims arising by reason of 'Agreement for Sale of Leasehold.'

(g) A direction to Israel Dordek, Escrow Agent under said 'Agreement' from Avery Building Corporation to deliver documents 3(a) and (b) above referred to, and a receipt for said documents."

This section sets forth the documents the plaintiffs and defendant were to deliver on the effective date of the contract. No mention is made of Goldstein's consent. It would seem that if 2(c) were meant to be a condition of purchase, and if it were the plaintiffs' duty to meet this condition, the consent would have been listed in § 3. It would have been natural to have included this as part of 3(e). The fact that it is not mentioned would lead to the belief that it was intentionally listed in § 2 among the other subjects which were to be subordinate to the assignments.

■ On the other hand, when removed from its context 2(c) would seem to state a condition which

310

had to be complied with before the contract would be operative. One of the definitions of *subject to* is *contingent or conditioned upon,* such as *subject to* approval. Webster's New World Dictionary, 1958; Black's Law Dictionary, 1951. The fact that 2(c) may be susceptible of two constructions does not of itself make the amended complaint vulnerable to dismissal. The ambiguity could be resolved and the intent of the parties ascertained by evidence.

If the defendant's construction were adopted the first question to arise would be whose obligation was it to procure Goldstein's consent? It might be presumed to be that of the plaintiffs, for they were the sellers and they had agreed to give good title in their instruments of assignment. This, however, is based upon the inference that the lease required a consent prior to assignment. While this might be a reasonable inference, inasmuch as the consent was spoken of in the contract, this cannot be definitely determined without reading the lease; and the Goldstein lease was not part of the amended complaint.

■ ■ If it was the plaintiffs' responsibility they were relieved from tendering the consent on December 1st. The amended complaint charged that the defendant repudiated the contract. This allegation was well pleaded and was therefore admitted for the purpose of the motion to dismiss. It was unnecessary for the plaintiffs to go through the useless gesture of securing all the documents and of tendering them to the defendant on that date. Bonde v. Weber, 6 Ill.2d 365.

■ Further, we do not believe the plaintiffs' failure to allege that they had secured the consent should preclude them from maintaining an action for specific performance. It is true that a party desiring specific performance must show that he is ready, able and willing to carry out his part of the contract, and

311

the plaintiffs so alleged. Carver v. Van Arsdale, 312 Ill. 220; Short v. Kieffer, 142 Ill. 258. But it is also true that this may not be necessary if he can show a reasonable and just excuse for nonperformance. Bothwell v. Schmidt, 248 Ill. 586; Carver v. Van Arsdale, supra. On what is before us, exclusive of evidence, we would have to hold that the plaintiffs' interpretation of the contract was reasonable, that they had basis for believing they did not have to obtain the consent and that this was a just excuse for their not doing so. Furthermore, when the court ruled that it was a requirement, they obtained the consent on the very same day of the ruling. This would substantiate the inference that they could have done so before filing the complaint if it had been deemed necessary.

By attaching Goldstein's consent to their amended complaint the plaintiffs manifested their ability as well as their willingness to perform all obligations incumbent upon them. It has been held that a tender made during the course of trial is sufficient. In Moehling v. Pierce, 3 Ill.2d 418, the court said:

"It is sufficient in equity that the appellees are entitled to a decree according to the circumstances and the nature of the case as they exist at the time the decree is entered."

In Bonde v. Weber, supra, the court said:

"When a party to a contract for the sale of real estate has openly refused to perform his part of the agreement, or has manifested an intention not to perform in any event, an actual tender by the plaintiffs, before suit for specific performance is brought, is unnecessary. It is sufficient if tender is made in the pleadings and it is shown that plaintiff is then ready, willing and able to perform his part of the agreement. (Moehling v. Pierce, 3 Ill.2d 418; Neidhardt v. Frank, 325 Ill. 596; Mishelsky v. Carman, 320 Ill. 123.) In

312

any event the tender made in this case during the course of the trial was sufficient."

■ In our opinion the amended complaint stated a cause of action and should not have been dismissed.

The second count of the complaint is in the nature of a creditor's bill. Prior to 1956 it was clear that such a bill could not be filed unless there had been a judgment and an execution upon the judgment had been returned *nulla bona.* Birney v. Solomon, 348 Ill. 410.

The plaintiffs contend that this has been changed because of the 1955 amendment to § 44 of the Civil Practice Act (ch. 110, Ill. Rev. Stat. 1957), which became effective January 1, 1956. The particular amendment relied upon is the second sentence in the following quotation from § (1):

"Subject to rules any plaintiff or plaintiffs may join any causes of action, whether legal or equitable or both, against any defendant or defendants; . . . . If a cause of action is one heretofore cognizable only after another cause of action has been prosecuted to a conclusion, the two causes of action may be joined; but the court shall grant relief only in accordance with the relative substantive rights of the parties."

In the comments of the committee which drafted the amendment it is stated that, "The addition to subsection (1) is based ●n the policy of permitting a party to seek in a single proceeding all the relief to which he is entitled."

No Illinois case has come to our attention which construes § 44(1) with regard to the particular problem before us. The plaintiffs cited Huntress v. Huntress' Estate, 235 F.2d 205 (1956), a case arising in Illinois in which the court ruled that a creditor's bill could be combined with a suit for specific performance under Federal Rule 18(b). At first glance this case would seem to be in point because the amendment to § 44(1) was patterned after this rule. How-

313

ever, the Federal court merely held that the Illinois law was not substantive and therefore would not be followed.

The applicability of our Civil Practice Act is limited by § 1, which states:

"The provisions of this Act apply to all civil proceedings . . . except in . . . proceedings in which the procedure is regulated by separate statutes. In all those proceedings the separate statutes control to the extent to which they regulate procedure, . . . ."

The procedure for a creditor's bill is regulated by a separate statute. Paragraph 49 of the Chancery Act, ch. 22, Ill. Rev. Stat. 1957, provides for what is generally called a creditor's bill:

"Whenever an execution shall have been issued against the property of a defendant, on a judgment at law or in equity, and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a complaint against such defendant, and any other person, to compel the discovery of any property or thing in action, belonging to the defendant. . . ."

This statute is procedural to the extent that it outlines the steps which must be taken before a creditor's bill of discovery can be brought. It also has been held to be both procedural and substantive:

"It is clear from the holdings of this court and that of other jurisdictions, that § 49 of the Chancery Act creates a rule of property and does not relate solely to procedure." Hummel v. Cardwell, 390 Ill. 526, 62 N.E.2d 433.

In the Huntress case, supra, relied upon by the plaintiffs, it was contended by the defendant:

". . . that the Illinois rule that a judgment must be obtained and an execution returned unsatisfied be-

314

fore a suit in the nature of a creditor's bill can be maintained is a substantive rule of property."

The court rejected this argument and held § 49 was procedural. Therefore, the court applied Rule 18(b) of the Federal Rules of Civil Procedure rather than the procedure outlined in § 49 of the Illinois Chancery statute. Section 44 of the Civil Practice Act does not supersede the specific provision of § 49 of the Chancery Act. A judgment and the return of an unsatisfied execution are still conditions which must precede the filing of a creditor's bill. Hart v. Oliver, 296 Ill. 209. The trial court was correct in dismissing Count II of the amended complaint.

The order of the court is affirmed as to Count II and reversed as to Count I, and the cause is remanded for further proceedings under Count I.

Affirmed in part and reversed in part; and cause remanded with directions.

McCORMICK, P. J. and SCHWARTZ, J., concur.