Paul E. Hamer *et al.*, Plaintiffs-Appellants, *v.* The Village of Deerfield *et al.*, Defendants-Appellees.

(No. 74-117;

Second District (2nd Division)—November 25, 1975.

Paul E. Hamer, *pro se.*

Peterson & Houpt, of Chicago, for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Plaintiffs appeal from the dismissal, on defendants' motion, of a four-count taxpayers' suit for declaratory judgment, injunction, and other relief, challenging the validity of a "50-50 cost sharing program" for sidewalk replacement in effect since the year 1961 by the Village of Deerfield; under such "program" the property owner pays half of the cost of replacement of defective sidewalks in front of his property and the Village pays the other half.

The material facts alleged in the second amended complaint filed March 30, 1972, are in substance as follows: Plaintiffs are residents, taxpayers and owners of property on Pine Street in Deerfield, a municipality of less than 25,000 in population. On June 9, 1971, plaintiff Hamer, by letter, notified Deerfield that the sidewalk in front of his property needed replacement. The letter stated that four days earlier a child on roller skates fell there and Hamer requested that Deerfield repair the defective sidewalk at its earliest convenience. On June 11, an employee of defendant Gulbrandsen (a cement contractor employed by Deerfield) notified Hamer that upon payment of half the cost, *i.e.*, $85.50, portions of the sidewalk which that man had marked with red paint would be replaced. On June 15 Hamer asked Deerfield's Village Manager for a letter setting forth details of the sidewalk replacement program. He received such a letter dated June 24. Hamer then asked to be furnished the statutory basis for the program and received a letter dated July 8 from Deerfield's attorney. That letter stated that it was based on section 11—84—1 of the Municipal Code. On July 19 Hamer wrote a letter to the Village President and its Board of Trustees relating the foregoing facts and stating that Hamer had visited the Village Hall on July 19 to examine any ordinances that may be required under section 11—84—1 and was told by the Village Manager that there were none; Hamer then requested in that letter that the defective sections of the sidewalk "be replaced by means of Motor Fuel Tax Funds" and that the sidewalk repair program comply with "statutory requirements." On August 5 Hamer received the Village Manager's letter dated August 4 stating that Deerfield's "Mayor and Board of Trustees," at their meeting, had declined to utilize motor fuel tax funds for the replacement of the sidewalk; that "one of the trustees" was of the opinion, after viewing the walk, "that it was not deteriorated to the point where a person would have difficulty negotiating it and therefore is not seriously in need of replacement." Thereupon

Hamer, by letter dated August 9 to Deerfield's corporate authorities, requested them to terminate the present sidewalk replacement program, and to return to Deerfield's citizens all funds obtained thereunder. (Attached to the complaint are copies of all of those letters as exhibits.)

Deerfield enacted no ordinance relating to the sidewalk program "until an ordinance was recently proposed."[1] The complaint alleged that Deerfield is without power to enact the proposed ordinance and that it "will be null and void." The complaint further alleged that since 1961 Deerfield expended tax moneys without statutory power in maintaining that program and many citizens participated therein and were required to pay fees "under coercion or compulsion," the amount of which cannot be ascertained without an accounting: that Plaintiff Reticker paid $168 to Deerfield in 1969 to have the sidewalk in front of his home on Pine Street repaired under the program; that Deerfield's Village Manager represented it was a valid program when he knew or should have known that such representation was false; that similar representations were made to plaintiffs and the public generally, in reliance on which the property owners were induced to pay fees. The complaint then lists four other addresses on Pine Street, as well as that of Reticker, where public sidewalks were repaired, and states that only those "who participate" in the program have their sidewalks repaired.

The complaint further alleged that all of the sidewalks are in the public right-of-way, not on private property, and are under Deerfield's control and jurisdiction; that the sidewalk in front of plaintiff's (Hamers') property, next to the street curb, has a hole 2 inches deep at the curb line and measures 14 by 45 inches; that the Village of Deerfield having received notice of the defect is liable under the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, par. 3—102) for injuries received as a result thereof, and that any resulting judgments would have to be paid from tax moneys partly paid by plaintiffs.

In Count I, plaintiffs on behalf of themselves and all other citizens, property owners and taxpayers, ask for declaratory judgment respecting the rights, duties and legal relations of the parties, adjudging Deerfield's sidewalk replacement program to be in contravention of the Municipal Code, requiring an accounting of public funds expended thereon and refunds to those property owners who paid fees thereunder.

In Count II, plaintiffs on behalf of themselves and others similarly situated (taxpayers, property owners and citizens), ask for a mandatory

---

[1] The ordinance referred to is "No. 0—72—," a copy of which was attached to the complaint as Exhibit I.

injunction directing Deerfield to comply with applicable provisions of the Municipal Code in replacing future sidewalks, to repair defective sidewalks under any financial plan available under the Municipal Code or Highway Code, and for an accounting and refund of sums heretofore paid under the present sidewalk program.

Count III, brought in the name of the People of the State of Illinois on the relation of plaintiffs as petitioners, asks in the alternative for a writ of mandamus commanding Deerfield to perform its duty to replace sidewalks in compliance with the Municipal Code and to finance such replacement pursuant to the Municipal Code or Highway Code, and for an accounting and refund.

Count IV is brought by plaintiffs as Deerfield residents, citizens and taxpayers, in the name of, and for the benefit of, Deerfield, and asks that defendant Gulbrandsen, who has contracted with, and received moneys from, Deerfield for replacement of portions of certain sidewalks in Deerfield, be adjudged and declared liable for any moneys paid to him by Deerfield without lawful authority, and for an accounting of such sums and restitution thereof to Deerfield.

Defendants filed their motions to dismiss plaintiffs' second amended complaint (one motion directed to the Hamers and the other to plaintiff Reticker), grounded in substance on its insufficiency for failure of each of the counts to allege causes of action upon which the relief requested can be granted. In November, 1973, the trial court entered its order dismissing the second amended complaint.[2]

■■ The ultimate question to be decided is whether the second amended complaint of any of its counts state a cause of action on which relief can be granted. It is apparent that defendants' motions were brought under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 45). Since defendants' motions attack the legal, not the factual, sufficiency of the complaint all facts well pleaded by that complaint are taken as true for the purposes of that motion. *Cain v. American National Bank & Trust Co.*, 26 Ill.App.3d 574, 586.

■■ We first consider whether, based on the well pleaded facts of the complaint, Deerfield's 50-50 cost sharing sidewalk replacement program is a valid exercise of municipal power. There is no question but that the municipality has the power to pave or improve sidewalks, regulate their use and to adopt proper and necessary ordinances to carry such power into effect. (Ill. Rev. Stat. 1971, ch. 24, pars. 11—61—2, 11—80—13 and 1—2—1.) It should be pointed out at the outset that Deerfield concedes

---

[2] The order was amended on January 9, 1974, by amending the caption and by adding the words "that there is no reason to delay an appeal of this matter."

that it has an obligation and duty to maintain the public sidewalks in good repair, is responsible for injuries occasioned by its failure to do so, after notice of an unsafe condition and a reasonable time to correct it, and that it does not exercise Home Rule powers.

To pay for the cost of the sidewalk repairs several methods are available to municipalities. These include special assessments under section 9—2—1 *et seq.* of the Municipal Code, and special taxation under section 11—84—1 *et seq.* (Ill. Rev. Stat. 1971, ch. 24, pars. 9—2—1 *et seq.* and 11—84—1 *et seq.*); and the use of motor fuel tax funds under section 7—202.15 of the Illinois Highway Code (Ill. Rev. Stat. 1971, ch. 121, par. 7—202.15). The statutes providing for special assessments and special taxation require the adoption of ordinances by the municipality for the exercise of those powers.

The complaint alleges that although this sidewalk repair program has been in effect since 1961 Deerfield has enacted no ordinance relating thereto: that an ordinance was "recently proposed" but that it "will be null and void." Thus, for the purpose of defendants' motions to dismiss it must be assumed that no ordinance was adopted by Deerfield for the exercise of those powers or for its maintenance of the 50-50 cost sharing program.[3]

Statutes granting powers to a municipality are to be strictly construed, and any reasonable doubt as to such power is resolved against the municipal corporation claiming to exercise it. (*Houston v. Village of Maywood*, 11 Ill.App.2d 433, 437.) We are therefore unable at this juncture to say that the program maintained by Deerfield is a valid exercise of municipal power.

The allegation of the complaint that Deerfield acknowledged that the sidewalk in front of the Hamers was in need of repair and that the portion thereof requiring replacement was marked with red paint stands as admitted on defendants' motion to dismiss. It was only after Hamers' refusal to pay the 50% share of the cost of such replacement that Deerfield declined to utilize other sources of funds to pay the cost of such repair, and for the first time asserted that no replacement was needed. These allegations of fact clearly support the plaintiffs' allegations that the program was compulsory, not voluntary. It thus appears that unless

---

[3] The trial court's order of dismissal refers to, and construes, two Deerfield ordinances which are not referred to in any way in the complaint (or in any motion directed against the complaint). They are not included in the record and no explanation has been given in briefs or oral argument for the trial court's seeming reliance upon them. Under the circumstances we are compelled to disregard them. For the same reason we disregard the "recently proposed ordinance" and decline to render an advisory opinion as to the validity of "proposed" legislation.

property owners complied "voluntarily," sidewalks in front of their parcels would not be replaced or repaired.

■■ We next consider whether the complaint was properly brought as a taxpayers' suit or a class action. The subject matter of all of the counts is the money allegedly improperly collected by Deerfield under the "program." Various remedies were sought, including an accounting to determine the amount improperly collected from the class, and imposition of a constructive trust on the money and the restriction thereof. Whether there is a common interest among all members of the class who were "compelled" to pay part of the cost of sidewalk replacement under the program without statutory authority and in the results thereof, and whether plaintiffs are able adequately to represent the class, can be determined only after answer and hearing. See *Hagerty v. General Motors Corp.*, 59 Ill.2d 52, 57, affirming in part, reversing in part and remanding 14 Ill.App.3d 33; and *Perlman v. First National Bank of Chicago*, 15 Ill.App.3d 784; see also *Fiorito v. Jones*, 39 Ill.2d 531, 543-44.

Whether plaintiffs would be entitled to a writ of mandamus can likewise only be determined after answer and hearing. If plaintiffs are then able to show a clear and legal right to the writ, that the corporate authorities have abused their discretion in refusing to replace or repair sidewalks in compliance with their duty, the issuance of the writ of mandamus may be proper (*People v. City of Rock Island*, 45 Ill.App.2d 76, 84-86), unless it is established that there is available to the plaintiffs some other plain, adequate and complete method of obtaining the relief to which the plaintiffs are entitled. See 52 Am. Jur. 2d *Mandamus* § 46 (1970).

There are sufficient, well pleaded facts alleged in the second amended complaint to warrant equitable intervention and injunctive relief. (For a recent decision involving a class action, taxpayers' suit for declaratory judgment and injunctive relief, and holding that it was not necessary to give notice to affect the taxpayers and taxing bodies, see *Hamer v. Lehnhausen*, 60 Ill.2d 400.)

■■ On the basis of the well-pleaded facts, we hold that Count IV states a cause of action on which relief can be granted. That count is brought by plaintiffs as taxpayers, on behalf of Deerfield, to obtain an accounting and restitution of funds paid without statutory authority to defendant Gulbrandsen. The right of taxpayers to bring suit for the recovery of public tax money expended without lawful authority is provided for by section 1—5—1 of the Municipal Code. Ill. Rev. Stat. 1971, ch. 24, par. 1—5—1.

We accordingly hold that the circuit court of Lake County erred in dismissing the second amended complaint. The judgment is therefore

reversed and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

T. MORAN and DIXON, JJ., concur.