INTERWAY, INC., Plaintiff-Appellant, v. MATTHEW J. ALAGNA, SR., et al., Defendants-Appellees.

First District (2nd Division)    No. 79-789

Opinion filed June 10, 1980.

Pederson & Houpt, of Chicago (Richard V. Houpt and Marc D. Janser, of counsel), for appellant.

J. Stirling Mortimer, Ltd., and John C. Polales, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Plaintiff filed a contract action against defendants seeking damages, specific performance and injunctive relief. Defendants filed a motion to dismiss the complaint for failure to state a cause of action, pursuant to section 45 of the Civil Practice Act. The trial court granted defendant's motion and denied plaintiff's motion to vacate the dismissal, or, alternatively, to allow the filing of an amended complaint. Plaintiff appeals. Our consideration of this case is limited to determining whether the trial court's grant of defendant's motion to dismiss was proper. However, in making that determination we must consider, in general terms, whether a letter of intent is enforceable in Illinois and more specifically, whether the letter of intent executed by the parties in the

instant case, containing language that their agreement was "subject to" the execution of a formal contract, was unenforceable as a matter of law.

For the reasons hereinafter set forth, we affirm the action of the circuit court of Cook County.

The facts, as pleaded, are not disputed. Defendant, Matthew J. Alagna, Sr., is the president and principal shareholder of Trailer Leasing Corporation, Inc. (TLC), a Delaware corporation engaged in the business of leasing trailers. Prior to March 1978, Alagna engaged the services of the brokerage firm of Clements, Garvey and Dole "to seek out prospective purchasers and otherwise assist in the negotiation and consummation of" a sale of the assets of TLC. Pursuant thereto, Clements, Garvey and Dole informed plaintiff, Interway, Inc., that the stock of TLC owned by Alagna was "available for purchase." Interway responded that they were interested in acquiring Alagna's stock and subsequently conducted an extensive analysis of TLC. Thereafter, the board of directors of Interway authorized officers of that corporation "to negotiate and consummate the purchase of Alagna's stock." On July 27, 1978, after various negotiations between the parties, a draft of a letter setting forth the terms and conditions of the proposed sale was reviewed at a meeting of Alagna, his attorney Donald Gillis, Interway's vice-president and general counsel, Dennis Kenney, and the brokers, Clements, Garvey and Dole. On July 28, 1978, the parties met again and discussed changes in their agreement. A "Letter of Intent" was prepared and was signed by Dennis Kenney as an agent of Interway and accepted by Matthew Alagna, Sr. This letter was set forth as exhibit A of the complaint and substantively provides that Interway would transfer $1,618,157.13 worth of Interway stock to Alagna in exchange for Alagna's interest in TLC. The document also contained provisions concerning bonuses, brokerage fees, warranties, insurance, noncompetition clauses and discharge of a note. Plaintiff's amended complaint alleges that Dennis Kenney, Interway's representative in the negotiations, indicated on July 28, 1978, that "it was *his* understanding and intent that the letter agreement be contractually binding on the parties," and that neither Alagna or his attorney indicated a contrary intention prior to the execution of the letter. On oral argument counsel for Alagna stated that he (Alagna) did not indicate an intent to be bound by the document. This is the sole discrepancy enunciated by the parties. However, the letter specifically states that:

> "Our purchase is subject to a definitive Purchase and Sale Contract to be executed by the parties."

On the following business day, July 31, 1978, Alagna informed Interway that he would not proceed with the execution of the formal contract.

Plaintiff, Interway, filed a three-count complaint alleging that defendant had breached the contract for the sale of shares of TLC and

requested specific performance, an injunction and alternatively, damages for the breach of the alleged contract. Defendants moved to dismiss the complaint pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45), asserting that the alleged contract was subject to a condition precedent which had not occurred and therefore the complaint was insufficient as a matter of law. The trial court granted defendants' motion to dismiss the complaint, and plaintiff thereafter filed a motion to vacate that order, or, alternatively, to grant plaintiff leave to file an amended complaint. This motion was denied and plaintiff appeals.[1]

We note, at the outset, that the parties do not dispute the general rule that a motion to dismiss filed pursuant to section 45 of the Civil Practice Act admits all facts well pleaded, and that reasonable inferences which may be drawn therefrom are taken as true for purposes of that motion. (*Courtney v. Board of Education* (1972), 6 Ill. App. 3d 424, 286 N.E.2d 25; *Harrington & Co. v. Timmerman* (1977), 50 Ill. App. 3d 404, 365 N.E.2d 721.) A motion to dismiss a complaint for failure to state a cause of action "attacks the legal sufficiency of the complaint, not the factual sufficiency." (*Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 586, 325 N.E.2d 799; *Hamer v. Village of Deerfield* (1975), 33 Ill. App. 3d 804, 338 N.E.2d 242.) In an appeal from a section 45 dismissal, a reviewing court should interpret the facts alleged in the complaint in the light most favorable to the plaintiff. (*Farns Associates, Inc. v. Sternback* (1979), 77 Ill. App. 3d 249, 395 N.E.2d 1103.) Additionally, a complaint should not be dismissed under section 45 unless the pleadings disclose that no set of facts could be proved that would entitle the plaintiff to relief. (*Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 398 N.E.2d 313.) With this framework in mind, we turn to the dispositive issues on this appeal.

Initially, we must determine whether a document that embodies the essential terms of a contract, yet recites that a more formal agreement will be executed by the parties, is enforceable in Illinois. Commonly referred to as "Letters of Intent," these documents present the issue of whether the provisions agreed upon in the letter are contractually binding or are mere articulations of the parties' present state of negotiation. See Zehnle, *Letters of Intent: The Present State of Illinois Law*, 67 Ill. B.J. 286 (1979). ■■ ■ The fact that parties contemplate that a formal agreement will eventually be executed does not necessarily render prior agreements "mere negotiations, where it is clear that the ultimate contract will be substantially" based upon the same terms as the previous document.

---

[1] The order of the trial court denying this motion specifically states that "It is further ordered and leave is granted to plaintiff to file, for record, its Motion to Vacate or in the Alternative to File an Amended Complaint with Attached Pleadings." It appears the purpose of this portion of the order was to allow the facts pleaded in plaintiff's amended complaint to become part of the record for this appeal.

(*Frank Horton & Co. v. Cook Electric Co.* (7th Cir. 1966), 356 F.2d 485, 490, *cert. denied* (1966), 384 U.S. 952, 16 L. Ed. 2d 548, 86 S. Ct. 1572; *Evans, Inc. v. Tiffany & Co.* (N.D. Ill. 1976), 416 F. Supp. 224; 17 Am. Jur. 2d *Contracts* §28, at 366 (1964); *Borg-Warner Corp. v. Anchor Coupling Co.* (1958), 16 Ill. 2d 234, 156 N.E.2d 513.) If the parties in the instant case intended that the letter be contractually binding, that intention would not be defeated by the mere recitation in the writing that a more formal agreement was yet to be drawn. However, parties may specifically provide that negotiations are not binding until a formal agreement is, in fact, executed. (*Terracom Development Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739, 365 N.E.2d 1028; Corbin, Contracts §30, at 78 (1st ed. 1963.) If the parties construe the execution of a formal agreement as a condition precedent, then no contract arises unless and until that formal agreement is executed. (*Brunette v. Vulcan Materials Co.* (1970), 119 Ill. App. 2d 390, 256 N.E.2d 44; 17 Am. Jur. 2d *Contracts* §28, at 364 (1964); *S. N. Nielsen Co. v. National Heat and Power Co.* (1975), 32 Ill. App. 3d 941, 946, 337 N.E.2d 387.) Consequently, it appears that although letters of intent may generally be enforceable in Illinois (see Zehnle, *Letters of Intent, The Present State of the Law in Illinois*, 67 Ill. B.J. 286 (1979)), such letters are not necessarily enforceable unless the parties intend them to be contractually obligatory.

■■ The determination of the intent of the parties to a contract may be a question of law or a question of fact, depending on the documents presented. (*Terracom*, at 743.) Our resolution of this issue in the instant case ultimately depends upon the characterization of the "subject to" language in the letter of intent. If this language is ambiguous, then the determination of its meaning is a question of fact (*Borg-Warner*; *Itek Corp. v. Chicago Aerial Industries, Inc.* (Del. 1968), 248 A.2d 625, applying Illinois law) and not properly resolved by a section 45 motion to dismiss (*Patton*). However, if the language is unambiguous, then the construction of the alleged contract is a question of law (*Nitrin, Inc. v. Bethlehem Steel Corp.* (1976), 35 Ill. App. 3d 577, 342 N.E.2d 65) and therefore properly determined by the trial court pursuant to section 45 of the Civil Practice Act. In Illinois the determination of whether a contract is ambiguous is initially a question of law to be determined by the trial court. (*Terracom*, at 744.) If the trial court finds that the agreement is ambiguous, then " 'parol evidence is admissible to explain and ascertain what the parties intended.' " (*Borg-Warner*, at 241.) However, if the trial court classifies the writings as unambiguous, then the intention of the parties must necessarily be determined solely from the language used in the document. *Nitrin, Inc.*; *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.

■■ In the case at bar, the trial court determined that the "subject to" language in the letter of intent was unambiguous and held, as a matter of law, that this language indicated that a formal, written agreement was a condition precedent to the formation of a binding contract. In appealing from the court's order, plaintiff argues that the term "subject to" is ambiguous and that the intention of the parties should therefore be subject to proof at a full trial. "Subject to" may have more than one meaning (*Young v. Wilkinson* (1959), 22 Ill. App. 2d 304, 160 N.E.2d 709, *rev'd on other grounds* (1960), 18 Ill. 2d 428, 164 N.E.2d 39 (1960); *Scafidi v. Puckett* (1978), 118 Ariz. 589, 578 P.2d 1018) depending on the circumstances of its use; however, when used in connection with contracts, these words usually indicate a condition on a party's duty of performance and suggest that mere negotiation is contemplated by the parties. (*El Reno Wholesale Grocery Co. v. Stocking* (1920), 293 Ill. 494, 127 N.E. 642.) In 17 Am. Jur. 2d *Contracts*.§320, at 749 (1964), it is stated that:

> "A proviso in a contract creates a condition, in the absence of anything in the contract to show that such was not the intention of the parties, and the emloyment of such words as "when," "after," "as soon as," or "*subject to*" usually indicates that a promise is not to be performed except upon a condition * * *." (Emphasis supplied.)

The trial court's finding in the instant case appears to be similar to the holding in *Brunette*, where the appellate court upheld the trial court's dismissal of the action pursuant to section 45 and stated that:

> "Where the reduction of an agreement to writing and its formal execution is viewed by the parties as a condition precedent to the vesting of rights and duties, there can be no contract until then, even if the actual terms have been agreed upon." (119 Ill. App. 2d 390, 395.)

Additionally, in *Barry v. James* (1979), 74 Ill. App. 3d 975, 394 N.E.2d 55, although that court was concerned with a motion for summary judgment, as distinguished from the motion to dismiss presented in the instant case, the court stated that the lower court "ruled correctly when it held, as a matter of law, the parties are not bound by any contract" since the clear and unequivocal language chosen indicated the parties' intention was to negotiate a written contract. In *Terracom*, the parties expressly stated in their correspondence that they would not be bound until a definitive written agreement had been executed. In sustaining the trial court's judgment that no contract resulted, it was held that the only obligation of the trial court was to "determine whether or not the language used by the parties was ambiguous." *Terracom*, at 745.

Similarly, in *Schek*, the supreme court stated that:

"The primary object in construing a contract is to give effect to the intention of the parties involved. Their intent must be determined solely from the language used when no ambiguity in its terms exists, and a strict construction of that language which reaches a different result from that intended by the parties should not be adopted." (42 Ill. 2d 362, 364.)

We agree with the trial court that the "subject to" language used in this contractual situation was unambiguous and consequently the parties' intent could be discerned from the writing itself.

■■ Interway additionally argues that inconsistencies exist on the face of the document which render the letter ambiguous. In support of this contention, Interway argues that in contrast to the futurity of the "subject to" language, the letter contains other, definitive statements such as "this will confirm our agreement" and "we have agreed." Thus, Interway argues, even if the "subject to" language itself is clear, the letter, taken as a whole, reveals internal inconsistencies and the document is therefore ambiguous on its face. We do not agree. We think that a review of the letter exhibits the tentative nature of any agreement between the parties. In addition to the express disclaimer that the purchase of Alagna's business was "subject to a definitive Purchase and Sale Contract," the letter contains various provisions which indicate the inconclusive state of the negotiations between the parties at the time the letter was signed. These provisions may more aptly be characterized as "subject headings" than a description of binding obligations. The following provisions demonstrate this lack of specificity:

"(d) Usual warranties including financial warranties on June 30, 1978, financials and bring down warranties.

(e) Opinion of Counsel for Seller.

(f) Non-compete clause of seller and wife. Seller will not directly or indirectly assist his son to compete with TLC."

It is obvious from the foregoing that questions concerning satisfactory warranties, discussions and/or disagreements involving the opinion of seller's counsel, and the extent, in both temporal and geographical terms, of the noncompetition clause, could arise and would require either clarification or additional agreements before the terms would have contractual finality. We also note that the letter requires Alagna to bear the risk of loss until closing and additionally to "cause any minority shareholders to transfer their shares." This latter statement is not amplified, and there is no provision which explains the obligation, if any, in the event that Alagna would be unable to secure the minority shareholders' compliance with the proposed sale. These provisions read in conjunction with the "subject to" language clearly impart an

incomplete state of agreement, and the letter on its face gives rise to no ambiguity. Contrary to Interway's contention, the clause, "This will confirm our agreement," when read in the context of the total letter, is not inconsistent because the parties had, in fact, preliminarily agreed to some aspects of the potential transaction. However, the clause in question does not establish that the process of negotiation had been completed.

Finally, we will comment on Interway's reliance upon the cases of *Borg-Warner, Itek* and *Evans* to persuade this court that the parties' intention is a question of fact, and that its complaint should not have been dismissed for failure to state a cause of action. In each of those cases the parties had disagreed about the facts surrounding their negotiations and their intentions regarding the writings. Additionally, each case evidences some substantial acts or expenditures on the part of at least one party in reliance upon the fact that they had a binding contract. We are aware of the principle set forth in 17 Am. Jur. 2d *Contracts* §28, at 366 (1964), where it is stated that:

> "If the parties act under the preliminary agreement or receive benefits thereunder, they will be held to be bound notwithstanding a formal contract has never been executed."

■■ It seems, therefore, that where substantial action has been taken by one party in reliance upon the expressed intentions of the parties, a contractually binding agreement may exist. However, no such "detrimental reliance" as evidenced by the *Borg-Warner, Itek* and *Evans* cases are present here. On the contrary, Alagna's intention to halt the negotiations was communicated to Interway on the first business day following the acceptance of the letter. Alagna does not dispute the facts as alleged by Interway. The pleadings, taken in the light most favorable to plaintiff, at best indicate that only one party (Interway) was of the opinion that the letter of intent was binding on all parties. This does not appear to be sufficient to contradict the plain, unambiguous meaning of the sentence that "Our purchase is subject to a definitive Purchase and Sale Contract to be executed by the parties." Since the intention of the parties must be determined from the face of the writing when such writing is unambiguous, we conclude that the trial court did not err in finding, as a matter of law, that the letter of intent in this instance evidenced mere negotiations and was not contractually binding on the parties.

For the foregoing reasons we affirm the order of the circuit court of Cook County dismissing plaintiff's complaint.

Affirmed.

STAMOS and HARTMAN, JJ., concur.