(No. 60928.—

CHICAGO INVESTMENT CORPORATION, Appellee, v. LOUIS DOLINS *et al.*, Appellants.

*Opinion filed July 17, 1985.*

122

Sidney Z. Karasik, of Chicago, for appellants.

William E. Rattner, of Levy & Erens, of Chicago, for appellee.

CHIEF JUSTICE CLARK delivered the opinion of the court:

Plaintiff, Chicago Investment Corporation (CIC),

brought this action to obtain specific performance as assignee of a purported real estate sales contract (the document) made between its assignor, James F. Graves (Graves), and the defendants, Louis and Max Dolins (the Dolins). The Dolins filed a motion to strike the complaint and dismiss the suit, alleging that there was no enforceable contract in existence. The circuit court of Cook County granted the Dolins' motion. The plaintiff appealed this decision.

The appellate court held that it was improper for the circuit court to resolve the issue of whether the document "unambiguously indicate[d] that the parties did *not* intend to be bound." (Emphasis in original.) (93 Ill. App. 3d 971, 975.) The appellate court went on to note that parol evidence should have been admitted in order to ascertain whether the parties intended to be bound by the document. Accordingly, the appellate court reversed the dismissal and remanded the cause for trial.

The case proceeded to trial on the issues raised by the pleadings. At the conclusion of a lengthy bench trial, the trial judge requested that the parties submit proposed findings of fact and conclusions of law. After reviewing both parties' proposed, detailed findings, the trial judge adopted the proposal which the Dolins submitted. CIC appealed once again.

The appellate court held that the judgment entered by the circuit court was against the manifest weight of the evidence. (126 Ill. App. 3d 1152.) In a Rule 23 order (87 Ill. 2d R. 23) the appellate court reversed the circuit court's judgment and remanded the cause with directions that the the circuit court enter a judgment in favor of CIC for "specific performance *** and for such other action as may be appropriate." We granted the Dolins' petition for leave to appeal (87 Ill. 2d R. 315).

The principal issue in this case is whether the appellate court erred by holding that the circuit court's find-

ings were against the manifest weight of the evidence. In Illinois, the law is well established that the trial judge, sitting without a jury, has the obligation of weighing the evidence and making findings of fact. (See *Johnson v. Lane* (1938), 369 Ill. 135; *Nofftz v. Nofftz* (1919), 290 Ill. 36.) In close cases, where findings of fact must necessarily be determined from the credibility of the witnesses (such as the case at bar), it is particularly true that an appellate court will defer to the findings of the circuit court unless they are against the manifest weight of the evidence. *People v. Cheek* (1982), 93 Ill. 2d 82, 94; *Dooley v. James A. Dooley Associates Employees Retirement Plan* (1982), 92 Ill. 2d 476, 489.

In the instant case, the appellate court correctly noted that the issue is largely based upon the expressed manifestations of intent of the parties to the document in question. In *W.T. Grant Co. v. Jaeger* (1922), 224 Ill. App. 538, the court enumerated some of the factors which are deemed persuasive in resolving the question which the court has considered in deciding the question at bar:

> "Circumstances which have been suggested as being helpful in determining the intention of the parties are whether the contract is one usually put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and premises; and whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations." 224 Ill. App. 538, 546.

Since the appellate court set forth the basic facts in its first opinion (93 Ill. App. 3d 971), except to the extent necessary, they will not be repeated here.

The relationship between the Dolins and Graves, sole stockholder of CIC, commenced in July of 1977 when Graves was introduced to the Dolins as an agent for

Lewis University Endowment Fund, Inc. After the initial meeting in 1977, the parties negotiated for the sale of a "package of hotels" owned by the Dolins. The negotiations lasted into the summer of 1979.

Following a series of discussions concerning the purchase of the package of hotels, a letter dated September 6, 1977, was prepared and signed by Graves on behalf of the endowment fund and by the Dolins. The letter mentioned five hotel properties by name and address, a purchase price, general terms of sale and financing, and the seller's responsibility for the brokerage commissions, as well as other matters.

Paragraph 5 of that letter stated:

> "You understand that *the final contract for sale* will contain standard provisions relating to title, prorations, the mechanics of closing and obligations of the buyer and sellers." (Emphasis added.)

Paragraph 6 stated:

> "This letter is not intended as a contract but merely as a statement of the present intentions and understandings of the parties. The transactions will be binding upon the parties only in accordance with the terms of the final contract of sale, only after such contract of sale has been approved by counsel of the parties and by our Board of Directors."

The plaintiff's witnesses, including Graves, described this letter as a "letter of intent" and acknowledged that as a "letter of intent" it was not intended to be a binding contract of purchase, that a "final contract" would have to be drawn and approved by counsel for the parties and by the endowment fund's board of directors.

Between September 6, 1977, and July 18, 1979 (the date of the document which the plaintiff claims is a contract and the subject of this lawsuit), a series of documents was prepared for the sale and purchase of the Dolins' hotel properties. The documents were drafts of

proposed contracts for the sale of the hotel properties. The drafts were entitled: "Agreement," "Agreement of Sale," "Memorandum of Agreement," and "Letter of Intent." The documents purporting to be drafts of "Agreement[s]" were generally lengthier than documents described as "Letter[s] of Intent." The agreements contain details customarily found in contracts for the sale of real estate. They specify various terms and conditions of sale, purchase price, earnest money, mortgage financing, security interest for the personal property, conditions of title, forms of conveyance, prorations, warranties and representations, forms and conditions of notice to the respective parties, provisions for escrow, as well as other items.

The Dolins signed only two documents, namely, the aforementioned "Letter of Intent" dated September 6, 1977, and the document in question dated July 18, 1979.

Although the document at issue does not contain the exact language of paragraphs 5 and 6 of the "Letter of Intent" (quoted above), it does contain the following provisions:

> "2F. *The final contract shall be* in form and substance *acceptable to attorneys for the Seller and Buyer.*
>
> * * *
>
> 2I. *Immediately upon execution of the contract contemplated herein,* Seller will take such steps as may be necessary or advisable in and about obtaining possession of 'Adult Book Store' currently occupying the store at Ohio East Hotel." (Emphasis added.)

No "final contract" was ever written or signed by any of the parties.

The fact that parties contemplate that a formal agreement will eventually be executed does not necessarily render prior agreements mere negotiations, where it is clear that the ultimate contract will be substantially based upon the same terms as the previous document.

(See *Borg-Warner Corp. v. Anchor Coupling Co.* (1958), 16 Ill. 2d 234.) If the parties in the instant case intended that the July 18, 1979, document be contractually binding, that intention would not be defeated by the mere recitation in the writing that a more formal agreement was yet to be drawn. However, parties may specifically provide that negotiations are not binding until a formal agreement is in fact executed. (See *Terracom Development Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739.) If the parties construe the execution of a formal agreement as a condition precedent, then no contract arises unless and until that formal agreement is executed.

In the case at bar, the trial judge not only placed reliance upon the language used in the July 18, 1979, document, he also considered items which are normally included in contracts of this nature, but were omitted in this document. The trial judge stated that these omissions were significant because they were included in the unsigned draft agreements. The trial judge noted the following omissions:

"(a) No date for consummation of sale is specified;

(b) No date for execution of the mentioned 'Purchase Money Mortgage and Note' or by whom it is to be executed or when interest payments are to commence, is mentioned;

(c) No reference is made to prorations;

(d) No mention is made of the terms of the contemplated mortgage in reference to conditions of default, allocation of indebtedness to the separate parcels, requirements as to escrow deposits, for taxes and insurance, commission of waste, or none of the customary items found in mortgage instruments are set forth;

(e) Details relating to release and release prices of the properties are left blank;

(f) Form of conveyance, whether by Trustee's Deed, Assignment of Beneficial Interest, Security Interest for

the personal property and other details are omitted.

(g) Warranties and representations are not mentioned.

(h) Forms of notice to the respective parties is omitted."

While all the foregoing omissions are not equally material, the trial judge specifically found that cumulatively they were significant.

Another salient factor relied on by the trial judge in reaching his decision was the testimony of the defendants concerning the "accommodation theory." The Dolins testified that Graves told them that he required a signed document, such as the document in question, for the purpose of showing prospective purchasers evidence that the long series of fruitless negotiations were still credible and that the Dolins were still seriously interested in selling their hotels for the "right price and terms of sale." The defendants also testified that they signed the document solely as an accommodation to Graves for the purpose which he stated to them, and not as a final, binding contract.

Conversely, Graves testified that he never made such a request and that the Dolins did not sign as an "accommodation" to him. However, the trial judge "disbelieve[d] Mr. Graves' disclaimer."

Another factor weighed by the trial judge was the caption of the July 18, 1979, document which was entitled: "Letter of Intent." The title of the document suggests preliminary negotiations, as opposed to a final and binding contract. Having weighed this factor, along with the aforementioned considerations, the trial judge found for the Dolins.

The appellate court, having only reviewed the record, concluded such a finding was against the manifest weight of the evidence. The appellate court found that the operative terms of the document were of sufficient

clarity to enable the required specific performance. In so finding, the appellate court concluded that "the totality of the record in the case at bar evinces an *objective* manifestation of intent on the part of the parties to be bound by the document they executed on July 18, 1979."

While we agree that the record does contain *some* evidence that the parties meant to be bound, we cannot agree with the appellate court's holding that the trial judge's finding was against the manifest weight of the evidence. In this case, there was ample evidence in the record to support the trial judge's findings. Merely because the appellate court might have, as the trier of fact, reached a different conclusion based upon the often conflicting evidence presented in this case, that does not justify a reversal of the circuit court. It must be remembered that it was the trial judge who saw the witnesses and heard them testify. His findings should be given due weight and consideration. Therefore, we hold that the finding in this case, that the parties did not intend to be bound by the July 18, 1979, document, was not against the manifest weight of the evidence.

Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*