In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3549

Beer Capitol Distributing, Inc.,

Plaintiff-Appellant,

v.

Guinness Bass Import Company,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00-C-0783--Lynn S. Adelman, Judge.

Argued April 9, 2002--Decided May 16, 2002

Before Flaum, Chief Judge, and Coffey and
Kanne, Circuit Judges.

Flaum, Chief Judge.  Beer Capitol
Distributing, Inc. ("Beer Capitol") held
the distribution rights to Guinness Bass
Import Company ("GBIC") products in
Waukesha County and most of Milwaukee
County, Wisconsin from 1992 through April
2000, at which point GBIC sent a notice
of termination to Beer Capitol. Beer
Capitol brought this action, alleging
violations of Wisconsin's Fair Dealership
Law, breach of contract, promissory
estoppel, and unjust enrichment. The
district court, sitting under diversity
jurisdiction and applying Wisconsin law,
granted GBIC's motion for summary
judgment and dismissed the suit in its
entirety. Beer Capitol appeals the ruling
only as to the promissory estoppel and
unjust enrichment claims. For the reasons
set forth below, we affirm the judgment
of the district court.

I.  Background

In late 1999, GBIC decided to
consolidate the southeastern Wisconsin
distribution rights to its products by
employing one distributor to serve the
entire area. At that time Beer Capitol
was one of five distributors in the area,
each serving a subsection of southeastern

Wisconsin. After GBIC made its plan known, three entities vied for the exclusive rights: Beer Capitol, United Beverage--a consortium of several of the other existing distributors, and Beechwood-- a local Anheuser Busch distributorship. GBIC ultimately selected Beechwood.

GBIC does not dispute that Beer Capitol was successful in distributing GBIC products in Waukesha and Milwaukee counties for the eight years that it held the rights to do so. Its sales for the territory increased tenfold over the course of the distributorship; Beer Capitol's sales performance greatly exceeded GBIC's national average. Likely because of this strong record, Kent Billingsley, the GBIC regional manager, told Beer Capitol that he would recommend--and did recommend--to GBIC's corporate executives charged with making the final decision that it be chosen as the consolidated southeastern Wisconsin distributor. After giving his recommendation, Billingsley informed Beer Capitol that he believed it to be the leading candidate. Beer Capitol believed itself to be the leading candidate as well.

In early 2000, Joseph Madrigrano, the founder and president of Beer Capitol, attended a meeting with GBIC's vice president of customer management, Jessie Gay; its central zone director, Eric Welles; and Billingsley. Beer Capitol contends that at this meeting, GBIC made statements that a reasonable person in Beer Capitol's position could have interpreted as a promise on which it could reasonably rely that it would be selected as the consolidated distributor. At the meeting, Gay asked Madrigrano whether Beer Capitol would be willing to pay 2 to 9 times earnings to the other four current distributors to gain an exclusive distributorship; Madrigrano responded in the affirmative. Beer Capitol contends that the question comprised a promise or representation that Beer Capitol would become the exclusive southeastern Wisconsin distributor of GBIC products. Beer Capitol also maintains that in reliance on that promise, it hired new staff members and continued to make improvements that it had begun based on Billingsley's statement that it was the

leading candidate, including installing a new computer system, and expanding its facilities.

On April 28, 2000, GBIC notified Beer Capitol that it had chosen Beechwood, an Anheuser-Busch distributor for southeastern Wisconsin, to be the sole distributor, and therefore terminated Beer Capitol. In its termination letters to Beer Capitol and the other previous distributors, GBIC offered compensation equivalent to one year's proceeds so long as the distributors agreed not to challenge the termination decision. Each terminated distributor but Beer Capitol agreed to these terms.

Instead, Beer Capitol brought the instant action against GBIC alleging violation of Wisconsin's Fair Dealership Law, breach of contract, promissory estoppel, and unjust enrichment. The district court granted GBIC summary judgment on each claim; Beer Capitol appeals as to the promissory estoppel and unjust enrichment claims.

II. Discussion

We review a grant of summary judgment de novo, viewing all of the facts, and drawing all reasonable inferences therefrom, in favor of the nonmoving party. See, e.g., Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706 (7th Cir. 2002). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id.; Fed. R. Civ. P. 56(c). If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because "a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

a. Promissory Estoppel

To prevail on a promissory estoppel claim, a plaintiff must present evidence

establishing 1) a promise; 2) on which the promisor should reasonably expect to induce action or forbearance; 3) which did induce such action or forbearance; and 4) that injustice can be avoided only by enforcement of that promise. Hoffman v. Red Owl Stores, Inc., 133 N.W.2d 267, 273 (Wis. 1965). The district court granted GBIC summary judgment on the issue, finding that no reasonable jury could find that the statements Beer Capitol produced as evidence constituted a promise.

In fact, Madrigrano acknowledges that no GBIC representative told him that Beer Capitol had been selected as the exclusive southeastern Wisconsin distributor. The only statements that Beer Capitol references are the promise by Billingsley to recommend Beer Capitol to corporate officials, which he kept, and Gay's inquiry into the ability and willingness of Beer Capitol to pay the other pre-consolidation distributors for their rights. Because these statements led to Madrigrano's belief and understanding that GBIC would appoint Beer Capitol the exclusive distributor, Beer Capitol maintains that a genuine issue of material fact exists and the claim should be presented to a jury. In order to avoid summary judgment, however, Beer Capitol had to show a genuine issue as to whether, under the objective "reasonable person" standard, GBIC's statements constituted a promise. Its subjective belief does not create such an issue.

"A promise is a manifestation of intent by the promisor to be bound, and is to be judged by an objective standard." Major Mat Co. v. Monsanto, 969 F.2d 579 (7th Cir. 1992). If the court finds that reasonable people in the position of the plaintiff could reach only one conclusion--that the defendant's statement was not a commitment but was instead "a mere prediction" or, in this case, an inquiry as to whether Beer Capitol could meet one of many conditions--summary judgment is appropriate. Id. (internal citations omitted). Beer Capitol's best argument is that a reasonable person in Madrigrano's shoes--that is, a reasonable person whose company had done a good job as a local distributor for eight years, and who had been told by GBIC's regional manager that

it was the leading candidate and that he would recommend it to the corporate executives in charge of the final decision--could find that Gay's question at the April 2000 meeting was a commitment to select Beer Capitol as the consolidated regional distributor. We find that, even from that vantage point, no reasonable person could construe as a promise Gay's inquiry regarding the ability or willingness to meet one of the conditions for appointment. It is possible to see how the April meeting could have resulted in a promise; a reasonable person could imagine that after Madrigrano stated that Beer Capitol could pay 2 to 9 times earnings for the other distributors' rights, a GBIC representative might have told Madrigrano that the decision had been made. Beer Capitol produced no evidence of such a statement, however, and, in fact, conceded that none existed. No reasonable person, in the position of Beer Capitol or otherwise, could interpret the statements that it did provide the court as a commitment. Although questions of fact may remain as to the extent and reasonability of Beer Capitol's reliance, they are immaterial. Because no promise existed, summary judgment was appropriate as to the promissory estoppel claim.

   b.   Unjust Enrichment

   Beer Capitol's assertion of unjust enrichment is similarly unavailing. To prevail on such a claim, it would have to show a benefit conferred on GBIC; GBIC's knowledge or appreciation of that benefit; and inequity that results from GBIC's retention of the benefit. Management Comp. Serv. v. Hawkins, 557 N.W. 2d 67 (Wis. 1996). Beer Capitol con tends that it conferred a benefit on GBIC by investing in the best personnel and computer system, as well as by its promotion and advertising of the GBIC brand name. As the district court noted, however, unjust enrichment is an obligation enforced in the absence of any agreement. Puttkammer v. Minth, 266 N.W.2d 361 (Wis. 1978). It is undisputed that Beer Capitol performed well as the Waukesha and Milwaukee counties distributor for eight years; it is also undisputed that it was compensated for that role during the course of the distributorship. If the enriched party

has paid for the value of the benefit received, no inequity results from retaining that benefit. Id.; see also Murray v. Abt Assoc., 18 F.3d 1376 (7th Cir. 1994) (Under Illinois law, similar to that of Wisconsin, an employee could not recover from its employer for unjust enrichment where a contract governed the parties' relationship.). The fact that the other terminated distributors received compensation and Beer Capitol did not is of no help to the company; Beer Capitol made a tactical decision to sue rather than to accept the payment. That choice did not unjustly benefit GBIC.

III. Conclusion

For the reasons stated herein, we AFFIRM the decision of the district court.